Sherry June Conway, Plaintiff-Appellant, and Dan Conway, Co-Plaintiff, v. Harold H. Epstein, et al., Defendants-Appellees, and Vincent LaRusso, et al., Co-Defendants.

Gen. No. 49,241.

First District, Second Division.

April 21, 1964.

Rehearing denied June 23, 1964.

Francis B. Stine, of Chicago (Brown, Stine & Cook, of counsel), for appellant.

Brooks, Gordon & Simon, of Chicago (Gilbert Gordon, of counsel), for appellees.

MR. JUSTICE FRIEND delivered the opinion of the court.

This suit was brought by plaintiff, Sherry June Conway, to recover damages for personal injuries sustained by her on April 22, 1959, when she tripped on worn-out stair carpeting and fell down the front hallway stairs of the apartment building in which she lived as a tenant. The building is located at 3940–42 West Wilcox Street, Chicago. The defendants are Harold and Mary Epstein, who were in the process of selling the building in which the plaintiff was injured, and Vincent LaRusso and Joe and Virginia Cardinale, who were the buyers. The defendants or one or more of them were charged in the complaint with the responsibility for the maintenance of the common stairway where the plaintiff fell and with negligence in failing to keep it in a reasonably safe condition.

The Epsteins moved the court for a summary judgment on the ground that at the time of the injury,

they were not operating, controlling or managing the premises in question. The trial court granted the motion. Plaintiff appeals from the dismissal of these defendants. The suit has not as yet been tried as to the defendants, LaRusso and the Cardinales. They are not parties to this appeal nor is coplaintiff Dan Conway. The court certified that there is no just reason for delaying the enforcement of the summary judgment or for delaying an appeal therefrom. Sec 50(2), chap 110 (1963 Ill Rev Stats).

By contract dated March 12, 1959, the Epsteins agreed to sell the property to LaRusso and the Cardinales. The sale price was $39,500 and the Epsteins agreed to convey "good title . . . by stamped warranty deed, . . ." subject only to existing leases, current taxes, building lines and the other usual exceptions contained in such contracts, but free of any existing mortgage. The contract stipulated the proratable items were to be adjusted as of the delivery of the deed and "existing leases and insurance policies, if any, shall thereupon be assigned and delivered to purchaser." The buyers applied for a loan on March 12, 1959 from the Bellwood Savings and Loan Association. The matter of the loan from Bellwood was handled from its inception by Henry Maiucci, its president. The Epsteins, LaRusso and the Cardinales went out to Bellwood on March 20, 1959, and executed the necessary papers, the Epsteins a deed to the purchasers and the latter a note and mortgage. Bellwood recorded the mortgage but not the deed and ordered the title brought down by the Chicago Title and Trust Company. The title report showed an existing trust deed from the Epsteins to the Chicago Title and Trust Company, as trustee, which mortgage was owned by a Mrs. Weller. The amount due from the Epsteins to Mrs. Weller on the existing mortgage was $3,576.80; Maiucci confirmed this with Mrs. Weller. On or before April 18, 1959, the purchasers and the sellers had prorated

the rents, the insurance premiums and other items customarily prorated. They had completed the assignments of insurance policies, including the public liability policy, and the assignments of leases, including the plaintiff's lease, and they had agreed upon a closing statement prepared by the broker dated April 18, 1959.

When the parties convened on April 18, 1959, at Bellwood, Maiucci proceeded with the payout of the loan in harmony with a loan statement which he had prepared on the assumption that the balance due from the Epsteins to Mrs. Weller on her mortgage was $3,576.80. Mrs. Weller was an elderly lady who could not attend the meeting at Bellwood because she was ill. On the following day, Maiucci called on Mrs. Weller to deliver her check to her and to pick up the old trust deed and note, but she declined to accept the check and to surrender the papers because she said the tendered payment was insufficient. Maiucci took the check back to Bellwood and notified all parties that Mrs. Weller claimed there was a discrepancy in the amount due her.

Maiucci testified that if everything "had gone right on the 18th," he would have taken the deed to the Chicago Title and Trust Company the following morning to record it and would have surrendered to the title company the Weller note and trust deed for a release so the title company could issue a guarantee policy in the names of the buyers. The deed was not recorded. Within the next day or two, Epstein convinced Mrs. Weller that the check tendered was correct and she surrendered the note and trust deed. On April 23, 1959, a representative of Bellwood recorded the deed. The recording was one day after the accident.

The plaintiff's theory of the case is that a material issue of fact exists for the jury's determination as to when the title and the right to possession of the property passed as between the Epsteins, as sellers,

and LaRusso and the Cardinales, as buyers, due to the irregularity which occurred in the closing of the sale and which, according to the plaintiff, prevented it from being consummated until after plaintiff's accident. Plaintiff believes that it was error for the trial court to resolve this issue of fact without having a trial.

■ Prior cases indicate quite clearly that injuries due to the negligent maintenance of property give rise to a right of recovery over against the party in control and possession of the premises. The case of Brazowski v. Chicago Title & Trust Co., 280 Ill App 293 (1935), cited by both parties, is directly in point. In that case, a child was injured on property, the title to which was in the defendant, as trustee, under a common form of land trust. The trust agreement provided that the management and control of the property should remain with the beneficiaries. This court in holding that the defendant trustee was not responsible for the condition of the property or liable for the injuries to the plaintiff, said at page 305:

> "We therefore conclude that the trustee, at the time of the accident, had neither the right to, nor the actual possession or control of the premises, upon which the injury occurred. It is a fundamental rule that the liability to pay damages for negligence arises out of the existence of a duty and a breach thereof. (Citation omitted.) The duty in the case at bar would, of necessity, arise out of the fact of possession and control, and can be attributed only to the person who has the possession and control."

The duty toward a third party arises out of possession and control, and can be attributed only to the persons who have possession and control. In the case at bar, by admission in their answer LaRusso and the

294

Cardinales had possession and control of the premises in question before the injury to the plaintiff (page 17, Abst). Therefore, because of the existence of this duty and an alleged breach thereof, the liability, if any, lies with LaRusso and the Cardinales.

To the same effect is a statement in Koehler v. Southmoor Bank & Trust Co., 40 Ill App2d 195, 189 NE2d 22 (1963), at page 198:

> "There is no doubt that liability may arise out of a negligent act committed by one who has possession and control of property, without regard to the character of his interest in that property. Brazowski v. Chicago Title & Trust Co., 280 Ill App 293 . . ."

The decision in Porter v. Miller, 24 Ill App2d 424, 164 NE2d 601 (1960), has considerable bearing on the case at bar. A minor was burned by a fire on a vacant lot in April, 1957. In July, 1955, the defendant had executed a contract of sale and a warranty deed, with the deed being placed in escrow. The purchaser was in possession of the lot as of July, 1955. At the time of the fire and the injury to the plaintiff, the deed was still in escrow and the purchase price was not yet fully paid nor due. The seller was not held liable to the plaintiff and was granted summary judgment. The court said at pages 428, 429 of 24 Ill App2d:

> "It is significant that plaintiff in the complaint does not allege specifically that [the seller] was in possession of [the] land. Rather reliance for liability is predicated on claimed ownership. Having sold the land in question, [the seller's] liability for subsequent negligent use of the land that caused injury to a third person ceased at the time of the sale and transfer of possession. Wiles v. Association of Commerce of Decatur, 332 Ill App 375, 75 NE2d 526."

Plaintiff's attempt to distinguish the Porter case is without merit. In Porter the contract of sale expressly provided that the buyer was to have possession upon the making of the contract; in the case at bar, the buyer admitted possession. Liability in Porter rested on possession, not on the fact that the right to possession was expressly provided for in the contract.

Summary judgment was properly granted because there was no dispute as to the single most important fact—that the Epsteins were no longer in possession at the time of the accident—and this fact gives rise to only one inference—that because LaRusso and the Cardinales had possession, plaintiff must look to them for recovery. The judgment of the Superior Court is affirmed.

Judgment affirmed.

BURKE, P. J. and BRYANT, J., concur.