Robert Lee Anderson, by Louise Anderson, his mother and next friend, Plaintiff-Appellant, *v.* Cosmopolitan National Bank of Chicago et al., Defendants—(William H. Suchier et al., Defendants-Appellees.)

(No. 52838; 

First District—March 23, 1971.

308

Heller & Morris and Jerome H. Torshen, both of Chicago, for appellant.

Edward C. Riordan, of Chicago, for appellees.

Mr. JUSTICE McCORMICK delivered the opinion of the court:

Plaintiff, Robert Lee Anderson, a minor, brought an action in the Circuit Court of Cook County, by his mother and next friend, Louise Anderson, seeking damages from William H. and Mary M. Suchier (Suchiers), defendants (among others) herein. Plaintiff's second amended complaint was dismissed on the Suchiers' motion for summary judgment. The court entered an order dismissing them from the suit and found, pursuant to former section 50(2) of the Civil Practice Act (Ill. Rev. Stat. 1963, ch. 110, par. 50(2), now Illinois Supreme Court Rule 304(a)), that there was no just reason to delay enforcement or appeal from its order. It is from the order granting summary judgment in favor of the Suchiers that this appeal has been taken.

On May 7, 1963, plaintiff was three years old, and resided with his mother in an apartment building located at 120 South Wood Street, in Chicago. He suffered injuries while playing on the second floor landing when he fell through a stair railing from which some slats were missing.

March 25, 1963, the Suchiers, the beneficial owners of the buildings, entered into an installment contract with Jessie and Mable Smith (Smiths), whereby the Smiths agreed to purchase the property. Among other things, the contract provided that title would not be conveyed until the Smiths completed their installment payments, and that the Suchiers were to have the right to make repairs on the property in the event the Smiths failed to do so. The Smiths took possession of the building on May 1, 1963.

In his second amended complaint plaintiff alleged that both the Suchiers and the Smiths were aware, or should have been aware of the defective condition of the railing. The gist of the complaint was that both the Suchiers and the Smiths had a duty to keep the railing in proper repair, and that they breached that duty by negligently failing to do so. The issue presented is whether the Suchiers, as contract vendors of the property, can be held responsible for injuries which were sustained subsequent to the time the vendees took possession, but resulting from defective conditions which existed prior to the transfer of possession.

■■ The Illinois courts have held in numerous cases that in a situation where a vendor surrenders possession and control of property, he is no longer liable to third persons who are injured as a result of defects

existing in the premises at the time of the transfer. (*Conway v. Epstein,* 49 Ill.App.2d 290; *Porter v. Miller,* 24 Ill.App.2d 424; *Koehler v. Southmoor Bank & Trust Co.,* 40 Ill.App.2d 195.) Our courts have also held that a trustee who holds legal title to realty is not liable for damages resulting from defects in the trust premises when by the terms of the trust agreement the beneficiaries and not the trustee have the power to make the needed repairs. *Brazowski v. Chicago Title & Trust Co.,* 280 Ill.App. 293; *Fields v. 6125 Indiana Ave. Apts., Inc.,* 47 Ill.App.2d 55.

In accordance with the above stated rule, and finding that the necessary elements of possession and control were lacking, the court in *Mulcahy v. Weber,* 98 Misc. 266, 162 N.Y.S. 985, held that a mortgagee is not responsible for injuries sustained as the result of defective conditions existing on the mortgaged property. Other courts have also followed that rule. (See *Bank of America v. Bank of Amador County,* 135 Cal.App. 714, 28 P.2d 86; *Zisman v. City of Duquesne,* 143 Pa. Super 263, 18 A.2d 95; *Lyon v. Queensboro Corporation,* 232 App.Div. 781, 248 N.Y.S. 353; *Sabiston's Adm'r v. Otis Elevator Co.,* 251 Ky. 222, 64 S.W.2d 588; *Sansotta v. City of Pittsburgh,* 330 Pa. 199, 199 A. 164.) In all of these cases the lack of possession and control was the determining factor precluding the imposition of liability.

■■ In situations involving the liability of landlords for injuries sustained as the result of defective conditions existing on their premises, the question of possession and control has in many instances been the determining factor in imposing or precluding the imposition of liability. The courts have held, for example, that when a landlord is in possession and control of the common ways of a building he has a duty to keep them in good repair, and will be held responsible for injuries sustained as a result of a breach of that duty. *Myrick v. Herrmann,* 17 Ill.App.2d 301; *Holsman v. Darling State Street Corp.,* 6 Ill.App.2d 517.

■■ The basis of the rule in each of the cited examples appears to be that if a trustee, mortgagee, landlord or vendor of realty is not in possession and control of the premises upon which the defective conditions exist, the failure to remedy them cannot be said to be the result of his negligence or the breach of any existing duty. In the absence of contractual obligations or a finding of vicarious liability, a plaintiff must look to the person guilty of negligence in order to recover. (*Darner v. Colby,* 375 Ill. 558.) In the case before us, plaintiff has sought to impose liability on the Suchiers by drawing an analogy between their relation to the building and that of a landlord to his property. (See *Combow v. Kansas City Ground Inv. Co.,* 358 Mo. 934, 218 S.W.2d 539; and *Smith v. Tucker,* 151 Tenn. 347, 270 S.W. 66.) [Both of these cases rejected this analogy in different factual settings.]

■■■ Although plaintiff has not cited any case, he has raised two points in support of his landlord-tenant analogy. He first argues that collecting payments on an installment contract is similar to the collection of rent from a tenant. It is urged that because the contract vendor has a monetary interest in the property, his relation to the property is similar to that of a landlord. We must disagree with that contention. When a tenant pays rent he is entitled to possession for only a limited period of time, and when the time expires he must surrender possession to the owner or other person entitled to possession. However, when one makes payments on an installment contract, he is usually considered to be the beneficial owner of the property. As the court stated in *Shay v. Penrose*, 25 Ill.2d 447, at 449:

"* * * when the owner of land enters into a valid and enforceable contract for its sale he continues to hold the legal title, but in trust for the buyer; * * * The conversion takes place at the time of entering into the contract."

As stated earlier in this opinion, the Illinois courts have held that a trustee will not be held liable for injuries sustained as a result of defects existing on the property to which he holds title, without a showing that he was in possession and control thereof. Applying the rule announced in *Shay v. Penrose, supra,* the Suchiers are to be treated not as the owners of the property but merely as trustees.

If an analogy is to be drawn to the relationship of the parties in question, the relationship of a mortgagee to a mortgagor would appear to be more fitting. In *Mackey v. Sherman*, 263 Ill.App. 109, the court, at page 115, cited *Smith v. Moore*, 26 Ill. 392, and stated that

"* * * upon this hearing the attention of the court was called to numerous cases holding that the relation which the purchaser of land under an executory contract occupied to the seller was that of a mortgagor. [Citing cases.] The court further said:

" '* * * we are satisfied that the rule is well-settled, *that for some purposes, and to some extent,* he may be held to be an equitable mortgagor.' "

At page 119, the court in *Mackey v. Sherman* further said:

"* * * contracts to purchase and sell lands made upon a valuable consideration and in other respects complying with the requisites prescribed by equity, as soon as executed and delivered, give to the vendee an equitable estate in the land, subject simply to a lien in favor of the seller as security for the payment of the price, while the vendor becomes equitable owner of the purchase money. [Pomeroy's Equity Jurisprudence, vol. 1, sec. 372.] This is the doctrine of equitable conversion and is generally accepted and fully recognized by

the decisions of the courts of this state upon which the cross complainant relies. While generally true, it by no means follows that the rule is without its exceptions. As stated in Story's Equity Jurisprudence, 14th Ed., vol. 1, sec. 81: 'There are exceptions to the doctrine where other equitable considerations intervene, or where the intent of the parties leads the other way; but these demonstrate, rather than shake, the potency of the general rule.' *Craig v. Leslie*, 16 U.S. 563."

■■ *Mulcahy v. Weber, supra,* and other cases cited clearly indicate that a mortgagee who is not in possession and control of the mortgaged realty will not be held responsible for injuries which are sustained as the result of existing defects.

Plaintiff's second point in support of his landlord-tenant analogy is the fact that by virtue of their contract the Suchiers retained the right to make repairs on the property in the event of the Smiths' failure to do so. Assuming that the Smiths did in fact default in their obligation to maintain the premises, and that the Suchiers were therefore entitled to exercise their right to enter and repair, we are not prepared to say that having a right to repair gives rise to a duty to repair.

The rule heretofore stated concerning a vendor's liability for injuries sustained subsequent to his surrender of possession and control appears to have been generally accepted in the United States. ( See Restatement, Second, Torts § 351; 8 A.L.R.2d 218; and 65 C.J.S. Negligence §§ 93—94.) However, a number of jurisdictions have created exceptions to the rule. See Restatement, Second, Torts § 353, and 8 A.L.R.2d 218.

Some jurisdictions have held that where a vendor fails to disclose a defective condition which he either knows or should know will not be discovered by his vendee, and is one which is likely to cause harm, that vendor will be held liable for any injuries resulting from the existence of such defective condition. The basis of liability in this situation is the vendor's failure to disclose. *Palmore v. Morris*, 182 Pa. 37, 37A. 995; *Phillips v. Mutual Life Ins. Co.*, 20 N.Y.S.2d 609; *McCabe v. Cohen*, 294 N.Y. 522, 63 N.E.2d 88.

Another exception to the rule is the situation where a vendee takes possession of the property with knowledge of defects, but sufficient time has not elapsed at the time of the accident to allow the vendee to take corrective measures. In such cases some courts have held that the vendor who is out of possession is liable. In *Farragher v. City of New York*, 26 App.Div.2d 494, 496, 275 N.Y.S. 542, 544, the court said:

"Where there is an undisclosed condition, and the vendee has no knowledge of this condition, or where the vendor actively conceals it, the liability remains with the vendor until the vendee has had a reasonable time to discover and remedy it. [Citing cases.] This principle

should be equally applicable where the vendee has knowledge of the dangerous condition at the time of the conveyance, but sufficient time has not elapsed at the time of the accident to allow the vendee to remedy the defect [see *Rufo v. South Brooklyn Savings Bank*, 268 App.Div. 1057, 52 N.Y.S.2d 469]. There is no basis to hold the vendee liable for a defect until a reasonable time to cure such defect has elapsed * * *.

In such circumstances, liability should remain with the vendor—the person who created the danger, or who was responsible for its continuance. As stated in *Kilmer v. White, supra* 254 N.Y. at 71, 171 N.E., at 910, '* * * it would be abhorrent to our notions of justice to relieve a vendor before fixing liability on the vendee.' Until liability passes to the new owner, the onus should remain with the old."

Although this point has not been raised by either party, we feel the rule is consistent with those announced by the Illinois courts. The New York courts and those of Illinois hold that where a vendor ceases to have possession and control of the premises upon which injuries are sustained, he will not be held responsible when the injuries are sustained subsequent to his surrender of possession. This is true even if the injuries were caused by defects which existed at the time of or prior to the conveyance. The reason for the rule appears to be that when a vendor is out of possession any negligence of which he may have been guilty cannot be said to be the direct or proximate cause of the injuries thereby sustained. This is true because the taking of possession by the vendee constitutes an intervening cause breaking the chain of causation. Since the failure to make repairs constitutes a continuing form of negligence, the moment a vendor surrenders possession to a vendee who knows of and has time to remedy the defective condition, the negligence of the vendor with respect to those existing defects ceases, and that of the vendee begins.

■■■■ However, where an injury occurs subsequent to a vendor's surrender, but prior to the expiration of that period of time which would have been necessary to allow the vendee to remedy the defect, the continuing negligence of the vendor does not cease, but in fact continues until the expiration of that period of time necessary to allow the vendee, acting as a reasonable man, to make the needed repairs. In short, where there is no negligence on the part of the vendee, the negligence of the vendor will not be cut off and the chain of causation will not have been broken. However, the question of whether a vendee had an opportunity to make the necessary repairs is a question of fact and must therefore be determined by a jury.

Because plaintiff's second amended complaint alleges facts from which

a jury could infer that the Smiths as vendees did not have a reasonable opportunity to repair the defective railing, the case must be reversed and remanded to permit the trial court to resolve the factual issues presented.

Reversed and remanded.

LEIGHTON, P. J., and STAMOS, J., concur.