(No. 44349.—

ROBERT LEE ANDERSON, by LOUISE ANDERSON, his mother and next friend, Appellee, v. COSMOPOLITAN NATIONAL BANK OF CHICAGO *et al.*— (William H. Suchier *et al.,* Appellants.)

*Opinion filed June 25, 1973.—Rehearing denied Sept. 27, 1973.*

GOLDENHERSH and KLUCZYNSKI, JJ., dissenting.

EDWARD C. RIORDAN, of Chicago, for appellant.

JEROME H. TORSHEN, LTD., of Chicago (JEROME H. TORSHEN, BENJAMIN H. COHEN, and LAWRENCE H. EIGER, of counsel), for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

This action was originally brought in the circuit court of Cook County on behalf of the plaintiff, Robert Lee Anderson, a minor, by his mother and next friend, Louise Anderson, against the Cosmopolitan National Bank of Chicago, Realty Service Co., Jesse Smith and Mable L. Smith, to recover damages for personal injuries allegedly suffered by the plaintiff. Thereafter leave was granted to file an amended complaint and to add William H. Suchier

and Mary Murphy Suchier as defendants. Subsequently, the trial court granted the Suchiers' motion for summary judgment, dismissed the action as to them and, acting pursuant to Supreme Court Rule 304(a), found that there was no just reason for delaying enforcement or appeal. The plaintiff appealed from the order and the appellate court reversed. (*Anderson v. Cosmopolitan Nat'l Bank of Chicago (Suchier)(1971), 132 Ill. App. 2d 307.*) We allowed the Suchiers' petition for leave to appeal.

The plaintiff's amended complaint, which was further amended in the appellate court under Supreme Court Rule 362, alleged that on May 7, 1963, the plaintiff, then three years old, resided with his mother in an apartment building located at 120 South Wood Street in Chicago. It further alleged that on that date the plaintiff was injured while playing in the second-floor hallway of the building when he fell through a railing from which some slats were missing.

It is undisputed that the Suchiers became the owners of the Wood Street property on March 25, 1963, when title was conveyed from Walter and Mildred Gainer to a trust of which William H. Suchier and Mary Murphy Suchier, his wife, as joint tenants, were the beneficiaries. On May 1, 1963, the Suchiers entered into an installment contract for the sale of the property for $3000 to Jessie and Mable Smith. One hundred dollars was paid down and the balance was to be paid in installments of $100 per month. No interest was to be charged if the payments were made on the first day of each month. Under the contract title was not to be conveyed until all the installment payments were made, and the seller retained the right to make repairs on the property if the purchaser did not do so. The contract provided that the buyer would keep the premises insured, and that if he did not do so the seller could, and add the amount paid for insurance to the purchase price. If the buyer failed to make an installment payment the seller could, at his option, consider the

contract forfeited, retain the payments made up to that time and retake possession of the property. The Smiths took possession on May 1, 1963.

In an affidavit filed in support of her motion in the appellate court for leave to file a second amended complaint, the plaintiff's mother stated:

"3. That on April 1, 1963, I rented the second floor apartment at 120 S. Wood, Chicago, Illinois, from Jessie Smith and Mable Smith, and paid $68 a month.

4. That I moved into the apartment and at that time stair railings were missing and I told the lady I was renting from, who was Mrs. Smith, to fix them and she never did.

5. That the railings were rotten and loose and I could tell that they were in bad condition and had been in bad condition for a long time before I moved in."

The plaintiff's theory is that the defect existed prior to the date of the installment contract sale to the Smiths and that the Suchiers knew or should have known of it, and were therefore negligent in failing to keep the property in repair.

The generally accepted rule in this country is that an ordinary vendor of real property is not liable for personal injuries which are sustained subsequent to his transfer of possession and control. (*Maisenbach v. Buckner (1971), 133 Ill. App. 2d 53, 272 N.E.2d 851, 854; Conway v. Epstein (1964), 49 Ill. App. 2d 290;* Annot., 48 A.L.R.3d 1027, 1035; Restatement 2d, Torts sec. 352.) The trial court applied this rule, and dismissed the action as to the vendors, the Suchiers.

The general rule, however, is subject to an established exception when the vendor actively conceals or fails to reveal a dangerous condition to the vendee. In this situation the liability of the vendor continues until the vendee discovers the defective condition and has an opportunity to remedy it. (Restatement 2d, Torts sec. 353.) In reversing the judgment of the circuit court, the appellate court relied upon the New York case of *Farragher v. City of New York (1966), 26 App. Div. 2d*

*494, 275 N.Y.S.2d 542, aff'd (1968), 21 N.Y.2d 756, 235 N.E.2d 218,* which extended this exception to a defect which was known to the vendee, and held that even in the case of a known defect the vendor's liability continues until a sufficient time has elapsed to permit the vendee to remedy it. And because the appellate court was of the opinion that the second amended complaint "alleges facts from which a jury could infer that the Smiths as vendees did not have a reasonable opportunity to repair the defective railing," the judgment was reversed and the case was remanded "to permit the trial court to resolve the factual issues presented."

The New York case involved an unusual situation. The defect was the absence of an automatic sprinkler system. It was undisputed that it would take 90 days to install such a system and the accident occurred when the vendee had been in possession less than 90 days. The position there taken by the New York court does not appear to have found acceptance elsewhere, and we are not persuaded that it should be applied generally to exonerate a vendee from liability for a defective condition of which he is aware. Even if we were to apply this exception to the present case, we could not agree with the appellate court's conclusion. Whatever may have been the relation of the Smiths to the property between April 1 and May 1, the interval between May 1, when they took possession, and May 7, when the accident occurred could not reasonably be found inadequate for the simple repairs here involved.

The plaintiff does not urge us to affirm the judgment of the appellate court for the reasons stated in the opinion of that court. Rather the argument is that those who sell real estate upon installment contracts should be subjected to a different and more strict liability than is imposed upon other vendors. Specifically, it is urged that "the 'contract seller' should be treated as an owner or lessor" because of the significant rights that he retains under his contract. These rights usually include the right to enter

and make repairs and to charge the cost to the buyer. The seller has the right to insure if the buyer fails to do so and, in the event of a default on the part of the buyer, has a simple remedy by which he may regain possession. We are not persuaded by this argument. Substantially similar arguments can be advanced with respect to mortgagees, who have the same or substantially similar rights. That the device of the installment contract as a means of financing the purchase of real estate is subject to abuse, and indeed has been abused, does not mean that it is not a useful credit device or that this court should impose upon a contract seller the liability of an owner of real estate.

In our opinion the judgment of the circuit court was correct, and it is affirmed. The judgment of the appellate court is reversed.

*Appellate court reversed; circuit court affirmed.*

MR. JUSTICE GOLDENHERSH, with whom MR. JUSTICE KLUCZYNSKI joins, dissenting:

Mr. Justice Kluczynski and I respectfully dissent from the majority opinion. We would affirm the judgment of the appellate court for the reason that the circuit court, in entering judgment for the defendants, failed to follow the established rule that the right of the moving party to summary judgment must be free from doubt and the motion denied if there are triable issues of fact which, if decided favorably to the opponent of the motion, will entitle him to the relief sought in his pleadings.

It is true, as stated by the majority, that the rule is generally accepted that an "ordinary" vendor of real estate is not liable for personal injuries sustained subsequent to his transfer of possession and control. The majority, however, recognize a well-defined exception to that rule that when there is a concealed dangerous or defective condition liability on the part of the vendor continues beyond discovery of the defective condition, and until there has been a reasonable "opportunity to remedy it."

Whether there has been an opportunity to remedy the defect is, of course, a question of fact.

In this case the vendors sold a building, apparently in a state of disrepair and dilapidation, as evidenced by a total price of $3,000, a down payment of $100, and "rotten and loose" porch and stair railings in "bad condition." The sale was made on May 1, 1963, and the plaintiff was injured on May 7. The same rationale which imposes liability upon one who sells property with a concealed, defective, dangerous condition until discovery, and until there has been an opportunity to repair, compels the conclusion that a vendor who sells property with a visibly dangerous defect should be held liable until a reasonably sufficient time has elapsed to permit the vendee to repair it. The only difference between the two situations is that in the case of the concealed defect the reasonable period of time commences to run from discovery, and in the case of the patently dangerous defect, from the time of relinquishment of the right to possession and control. In either instance, whether there has been a reasonable opportunity to repair is a question of fact.

The majority seek to distinguish the New York case on the ground that it "involved an unusual situation." In that case, unlike this one, it could at least be determined from the record what repairs were necessary and the length of time required to make them. Here, the majority, for reasons not apparent from this record, conclude as a matter of law that the time between May 1 and May 7 "could not reasonably be found inadequate for the simple repairs here involved." For all this record reflects it could well be that the "rotten" condition was so extensive as to require extensive reconstruction, not merely replacement of a rail.

We agree with the majority that this case need not be decided on the issue of whether a contract seller should be treated as an owner or lessor, but it should clearly be affirmed upon application of the rules governing summary

judgment. We point out that the effect of the appellate court decision is not, as stated by the majority, to exonerate the vendee, but to hold the vendors in the case until the fact issues can be decided upon the evidence. In contrast, the majority opinion serves to exonerate these vendors, sellers of property in a dangerously defective condition, without a determination of the key issue of whether there was a reasonably adequate period of time after the sale to permit the repairs to be made.