Mary Bader Firestone, Ex'r of the Estate of Clinton D. Firestone, Jr., · Deceased, *et al.,* Plaintiffs-Appellees, *v.* R. H. Lincoln, Inc., *et al.,* Defendants-Appellants.

(No. 73-314;

Third District—November 12, 1974.

William Brandt, of Bloomington, for appellant Union Oil Co.

Michael J. Costello, of Springfield, for appellant R. H. Lincoln, Inc.

James B. Lewis, of Peoria, for appellant Northern Illinois Gas Co.

John Naylor, of Bloomington, for appellees Voss and Wichmann.

John Morel, of Bloomington, for appellee Norman Bisel.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This was an action by plaintiffs-appellees Mary Bader Firestone, executor of the estate of Clinton D. Firestone, Jr., Wilbert Voss, Donald Wichmann and Norman Bisel against R. H. Lincoln, Inc., Union Oil Company of California and Northern Illinois Gas Company to recover damages

resulting from the negligence of defendants in maintaining and operating a boiler and natural gas fuel line. Plaintiffs were injured on May 18, 1970. All were employees of Bloomington Auto/Truck Plaza, Inc. which operated a garage, service station and tire sales business from the building. The premises and building were also occupied in part by R. H. Lincoln, Inc., which dealt in heating and air conditioning. R. H. Lincoln was 50% owner of the Bloomington Auto/Truck Plaza. The building was originally built by Five Star Truck Stop in about 1956. It was later sold to Pure Oil Company which merged with the defendant, Union Oil Company of California. Union leased the building and premises to R. H. Lincoln by lease dated September 24, 1968, and on December 17, 1969, while R. H. Lincoln was still a tenant under the lease, Union sold the premises to R. H. Lincoln by a contract for deed. The building was first served by an LP gas boiler and was later converted to natural gas which was sold and distributed to the premises by the defendant Northern Illinois Gas Company. On the morning of May 18, 1970, plaintiff Voss, as gas station manager for Bloomington Auto/Truck Plaza, called William Maitland, employee of R. H. Lincoln, to the premises to work on the hot water system of the building, which was not functioning. Maitland had shut down the boiler 10 to 14 days before by turning off the switch for the electrical system of the boiler. The turning off of the electricity allowed a solenoid controlled valve to close, thus shutting off gas supply to the burners. This did not shut off the gas supply to the pilot lights which remained lighted. About 3 P.M. on May 18, 1970, Clinton D. Firestone and plaintiffs Voss and Bisel searched for an odor described as "heat" or "wet burning rags." They eventually arrived at the boiler room. Firestone asked plaintiff Wichmann to come from the garage and help. All four went into the boiler room and were there about five minutes before an explosion occurred which seriously injured them. The jury returned verdicts in favor of the plaintiffs Voss, Wichmann and Bisel against Union Oil and Northern Illinois Gas Company in the amounts of $130,000, $75,000 and $50,000 respectively. The jury also found in favor of defendant R. H. Lincoln against plaintiffs. Judgment was entered on the verdicts and all posttrial motions were denied. The executor of the estate of Clinton D. Firestone, Jr., having reached a settlement, is not a party to this appeal. Defendants Union Oil and Northern Illinois Gas appeal the judgments against them and plaintiffs cross-appeal the judgments in favor of R. H. Lincoln in the event one or both of the judgments against Union Oil and/or Northern Illinois Gas are reversed on this appeal.

We shall first discuss the contentions of defendant-appellant Northern Illinois Gas Company. These contentions relate to the Gas Company's position that the evidence is insufficient to show that it violated any duty

or that its conduct proximately caused the explosion and consequent injuries.

The defendant contends that in accord with the rule in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504, the evidence when considered in its aspect most favorable to the plaintiffs so overwhelmingly favors the Gas Company that a contrary verdict based on this evidence should not be allowed to stand. Four experts testified, one for the plaintiffs, two for Union Oil and one for R. H. Lincoln. The testimony of the experts was extensive and was based in part upon the examination and inspection of physical evidence as it existed after the explosion as well as a description of such facts presented by other witnesses. The hypothetical questions also included the circumstances and conduct existing prior and subsequent to the explosion. The experts were extensively cross-examined by counsel for each of the parties, since in view of the multiple defendants the issue of causation necessarily involved conflicting interests, not only between the plaintiffs and the defendants, but between or among the defendants themselves.

So far as the theory of the plaintiffs against the Northern Illinois Gas Company is concerned, it finds its basis in evidence that some 5 months before the explosion a complaint was made to the Gas Company regarding the odor of gas. An employee of the Gas Company inspected the boiler system but could find no leak. Even though he inspected the boiler system including the fuel supply line the inspector gave no warning that the gas supply line contained an improper galvanized pipe fitting. There was evidence that the threads of the pipe which fitted into the galvanized fitting were rusted and deteriorated and that there was debris in the line as a result of such deterioration. According to the testimony such conditions could have been the consequence of using the improper galvanized fitting. It also appeared that in accord with the usual practice and custom of the Gas Company that such a fitting should have been discovered by the inspector and, if so discovered, the owner of the premises should have been warned that the fitting was unsuitable so that repairs could have been made. Sometime later, after the inspection, R. H. Lincoln also complained to the Gas Company about its high gas bill, from which it could have been inferred there was a gas leak on the premises.

It was plaintiffs' theory, based on the evidence of the experts, that combustible gases exploded or gas leaking from the defective fitting ignited at the pilot light, thereby causing a sufficient force to rupture the boiler either directly or by supplying fuel from the site of the leak to the fire box which over-pressurized the boiler.

In opposing plaintiffs' theory of liability as being unsupported by sufficient evidence, the defendant claims such theory is based solely on cir-

cumstantial evidence which is equally susceptible of contrary inferences. ■■ In effect defendant is saying that the only evidence here is circumstantial evidence and expert testimony which is susceptible of inconsistent inferences. It contends that the law is that to establish a theory by circumstantial evidence, it is necessary that the facts are of such a nature so that it is the only conclusion that could be reasonably drawn. Plaintiffs, on the other hand, contend that it is the function of the jury to draw the final conclusions as to the facts, and the fact that contrary inferences would be supported by evidence is not sufficient to show unreasonableness of the verdict, and such proof may be by either direct or circumstantial evidence. It is the jury's function to weigh the contradictory evidence, judge the credibility of the witnesses and draw the ultimate conclusion as to the facts. (*Oliver v. Peoples Gas Light & Coke Co.*, 5 Ill.App.3d 1093, 284 N.E.2d 432; *Finley v. New York Central R.R. Co.*, 19 Ill.2d 428, 167 N.E.2d 212.) In accordance with the foregoing rule, it cannot be held here that the existence of two possible contradictory theories as to the cause of the explosion (natural gas and/or boiler), both of which find support in the evidence, must necessarily lead to the conclusion that the verdict was erroneous. Not only do we believe there is sufficient evidence from which it may be inferred the explosion was the result of a gas leak, we also believe that the failure of the Gas Company to discover and warn of the consequences of the defective fitting constituted sufficient evidence of the Company's failure to exercise due care. We therefore believe these issues, based as they are upon conflicting evidence, were properly resolved by the jury in favor of the plaintiffs.

Next we consider the objections of appellant Union Oil Company to the judgments entered against it. Since, prior to the explosion, Union Oil had initially leased the premises and then sold them, different questions arise concerning the theory of recovery than those discussed in connection with the case against the Gas Company.

■■ The general rule regarding the liability of a vendor of real estate for injuries sustained on the real estate is the vendor is not liable for such injuries which are sustained subsequent to his transfer of possession and control. (*Anderson v. Cosmopolitan National Bank of Chicago*, 54 Ill.2d 504, 301 N.E.2d 296; *Conway v. Epstein*, 49 Ill.App.2d 290, 200 N.E.2d 16.) The exception to the rule which also is stated in the *Anderson* case is "*. * * when the vendor actively conceals or fails to reveal a dangerous condition to the vendee. In this situation the liability of the vendor continues until the vendee discovers the defective condition and has an opportunity to remedy it." (54 Ill.2d 504, 507.) Both the plaintiffs and defendant Union Oil concede the existence of the general rule and its

exception, although there is disagreement about how such rule and exception should be applied to the facts of this case.

In general the assignments of error urged by Union Oil which we believe it necessary to consider on this appeal relate to its claims that the amended complaint did not state a cause of action and that the issues instruction embodying the theory of the amended complaint was improper because contrary to legal rules as applied to the evidence. More particularly, Union Oil argues that it had sold the premises, had delivered possession thereof and had no liability under the exception to the general rule heretofore discussed. Both the allegations of the complaint and of the issues instruction with one exception are, according to defendant, based on alleged violations of duties incident to possession of the premises. Furthermore, according to defendant, the charge not based on a duty arising as a consequence of possession is insufficient to establish defendant's liability as a vendor not in possession of the premises.

To understand the arguments of the parties it will only be necessary to set forth the issues instruction since it embodies the negligence charged in the amended complaint. Plaintiff's instruction No. 4 as given to the jury is based on IPI 2d —— Civil No. 20.01 and states, "That the Plaintiffs each claim that the Plaintiffs * * * were injured * * * and that the Defendant, Union Oil Company, was negligent in one or more of the following respects: (a) Negligently permitted operation of a boiler without a valid State inspection certificate; (b) Negligently maintained the boiler while it was under their control; (c) Negligently sold the boiler while it was in a defective condition; (d) Negligently concealed a latent defect in property and failed to notify the purchaser of said defect; (e) Negligently installed and maintained defective gas fuel lines * * *."

The principal case discussed by the parties with regard to the liability of both Union and Lincoln, Union's lessee and later its contract purchaser, is *Anderson v. Cosmopolitan National Bank*, 54 Ill.2d 504, 301 N.E.2d 296. In that case plaintiff, 3 years old at the time of the incident, was injured while playing in a second floor hallway of his building when he fell through a railing from which some slats were missing. The appeal in that case was from the granting of summary judgment in favor of the vendors. About 3 weeks prior to plaintiff's injuries the vendors had entered into an installment contract for the sale of the property to two other parties. The vendors would not be divested of title until all the installment payments were made, and vendors retained the right to make repairs on the property if the purchaser did not do so. The buyers took possession about 3 weeks prior to plaintiff's injury. Plaintiff's mother's affidavit stated that she had rented the second floor apartment about 2

months prior to the incident and stair railings were missing at that time, and she had told the lady she rented from (the installment buyer) about the railings but they were never fixed. Plaintiff's theory was that the defect existed prior to the date of the installment contract sale and that the vendors knew or should have known of it and were therefore negligent in failing to keep the property in repair. The supreme court cited the general rule as stated earlier in this opinion, namely, that a vendor of real estate is not liable for injuries sustained after transfer of possession of the premises. It further discussed the exception relating to the vendor's liability continuing until the vendee discovers the defective condition and has an opportunity to remedy it. The court stated that the exception was created in a New York case concerning the absence of an automatic sprinkler system which would take 90 days to install and where the vendee had been in possession less than 90 days. The court declared that the New York position does not appear to have found acceptance elsewhere and should not be applied generally to exonerate a vendee from liability for a defective condition of which he is aware. The court also held that even if the exception were applicable to the case at hand, the amount of time between the buyers' taking possession and plaintiff's injury was adequate for the repairs there involved. The court went on to reject plaintiff's contention that those who sell real estate on installment contracts should be subjected to a different and more stringent liability than is imposed upon other vendors.

In analyzing the *Anderson* case we believe it is important to observe that the exception to the general rule is described in terms similar to those sometimes used in defining a latent defective condition, *i..e*, a dangerous condition which is either concealed by the seller or one which the seller either knew of or should have known of and did not disclose. If to such description were added the phrase that it was one that could not be discovered by a reasonable inspection of the premises, we would have generally the distinction between a dangerous condition described as "latent" or "patent." The dissent in *Anderson* recognizes that the distinctions do raise a difficulty but in reliance on a rule apparently announced in a New York case decides that the fact that a defective condition was known to the buyer was relevant only on the question whether he exercised reasonable efforts to remedy the situation. The New York case would seem to be somewhat lacking in persuasion, since it does not discuss those aspects of liability of a vendor, and indeed where a fireman is killed as a consequence of violations of fire regulations, different considerations may be involved.

So far as the instant case is concerned the *Anderson* case is significant because, one, it reiterates the general rule that once possession has been

transferred the vendor is not liable for injuries thereafter sustained as a consequence of conditions of the premises and two, the liability of a vendor·not in possession within the exception depends not on the conduct or circumstances existing while he was in possession but rather on his concealment or failure to disclose dangerous conditions which resulted in injuries before the buyer could have been reasonably expected to discover the condition and repair it.

As indicated earlier, Union Oil argues that the complaint does not state a cause of action, but in the view we have taken of this case we believe it is unnecessary to decide this issue. Rather we believe that all but one of the issues of negligence described both in the complaint and instruction depend on the theory that Union Oil was in possession of the premises at the time of the explosion, and, consequently, if there is insufficient evidence supporting the claim that Union Oil was in possession of the premises the jury's verdict cannot be sustained by these allegations of negligence.

■■ In considering the allegations of negligence contained in the issues instruction it appears that sub-paragraphs A, B, C, and E all relate to and depend upon Union Oil being in possession of the premises at the time of the explosion. Since admittedly the sale of the premises took place many months before the explosion it is our conclusion that the evidence is insufficient to support the contrary conclusion that Union was in possession of the premises. The only evidence called to our attention by the plaintiffs in any way suggesting that Union Oil had not parted with possession and control of the premises is that Union sold to Lincoln the boiler involved here 1 month after the explosion, pleaded guilty to the Boiler Act violations and exerted dominion over various items on the premises immediately after the explosion. In June, 1970, Union delivered a bill of sale to Lincoln in which they warranted that they owned the items recited on the bill of sale which included the boiler. We believe that all of the foregoing evidence is consistent with Union Oil's position as record owner of the premises retained as security for the unpaid balance. Such evidence does not support any inferences that Union Oil was in actual or constructive possession of any part of the premises at the time of the explosion or that it exercised any dominion or control over the premises or had the right to do so.

Accordingly, it is our conclusion that there is insufficient evidence to sustain any of the allegations in the issues instruction depending upon possession or control of the premises, and, consequently, these issues do not support the jury's verdict.

This brings us to a consideration of the issue embodied in sub-paragraph (d) of the issues instruction quoted above as it related to the com-

plaint, theory of the plaintiffs and the evidence. This issue and theory of recovery is based on the exception described in the *Anderson* case and according to plaintiffs embodies the theory of a vendor's continuing liability after transfer of possession of the premises.

As an initial observation sub-paragraph (d) of the issues instruction is somewhat vague, referring generally to a latent defect without either suggesting what a latent defect is or, as applied to the facts of this case, what latent defect is alleged to have existed based on the evidence. Defendant Union Oil suggests that if a vendor is to be charged with liability of consequences occurring after his transfer of possession that issue and proof must include: (a) that the vendee did not know or have reason to know of the conditions alleged or the risk involved; (b) that vendor knew or had reason to know of the condition and realized the risk involved and has reason to believe the vendee would not discover the condition or realize the risk; and (c) that vendee did not have a reasonable opportunity to discover the condition.

Defendant contends that the above allegations and evidence are required to support plaintiffs' theory of recovery where a sale has taken place and cites *Sparling v. Peabody Coal Co.*, 16 Ill.App.3d 301, 306 N.E.2d 79 (1973), and *Restatement (Second) of Torts*, § 353(1)b, comments at 236-238 (Undisclosed Dangerous Conditions Known to Vendor) (1965).

*Sparling* was an action by vendee's daughter against the company which assumed the assets and liabilities of the vendor for injuries sustained when she fell into a burning pile of slack or coal dust. The court held that the complaint failed to allege a cause of action against defendant-vendor. It stated that the question of the sufficiency of the complaint to state a cause of action will only be considered on appeal when the complaint wholly fails to state a cause of action and not when the complaint merely states a cause of action imperfectly. In *Sparling* it was held that the liability of a vendor in such cases as that is not derived from negligent conduct. "The duty derives from a condition upon the land * * * known to the vendor, and is predicated upon the existence of other conditions and for the time limitations as described in the Restatement rule. If there is a breach of the legal obligation, liability may attach irrespective of whether the vendor was negligent with regard to the creation of the condition or his conduct with regard to the vendee or others on the land." In *Sparling* the court stated that although the complaint alleges the existence of a condition which involves unreasonable risk to persons on the land (the burning pile of slack) it failed to allege, even in substance, that the vendee did not know or have reason to know of the condition or the risk involved. Nor did it allege that

the vendor knew or had reason to know of the burning pile of slack and realized the risk involved and had reason to believe that since the 1947 deed the vendee did not have a reasonable opportunity to discover the burning pile of slack and take precautions. Accordingly, the liability of defendant for injuries from the burning pile of slack continued. "The absence from the complaint of these elements of the defendant's liability leave a proper cause of action unstated; without them the cause of action is incomplete and the liability of the defendant will not attach."

■■ In reviewing the allegations, issues instruction and evidence, it is our conclusion the plaintiffs have failed to present a proper basis supporting its theory of liability. Wholly lacking are any references to the vendee's conduct or knowledge which are essential factors in the vendor's liability. If the vendee knew of whatever latent defect is complained of or could have discovered such latent defect within a reasonable time and could have reasonably been expected to remedy such defect before the incident occurred, then the vendor is not liable. In response to these deficiencies the plaintiffs argue that they are not required to elect between conflicting theories of recovery and consequently they argue that these factors or elements need not be alleged or the jury instructed about them. We do not agree with this argument, since it is our conclusion that the instruction incorrectly and inadequately states the law applicable and would permit a jury to hold a vendor not in possession liable where, as in the instant case, the vendee's knowledge and conduct might well have precluded vendor's liability. We therefore believe the judgment against Union Oil Company cannot stand.

We have earlier referred generally to the cross-appeal filed by plaintiffs against R. H. Lincoln and have indicated that such cross-appeal by specific declaration and its nature is contingent upon our rulings regarding the appeals of Northern Illinois Gas Company and Union Oil Company. Since we have sustained the judgment against Northern Illinois Gas Company, it is our belief that no useful purpose would be served the plaintiffs by considering such cross-appeal and, further, we assume the plaintiffs would have no interest in this court considering the cross-appeal.

For the foregoing reasons, the judgments of the circuit court of Peoria County in favor of the plaintiffs against Northern Illinois Gas Company are affirmed, the judgments against the plaintiffs and in favor of R. H. Lincoln Company are affirmed, and the judgments in favor of the plaintiffs against Union Oil Company are reversed.

Judgments affirmed in part, reversed in part.

SCOTT, P. J., and DIXON, J., concur.