RAYMOND R. MARTIN, SR., *et al.*, Plaintiffs-Appellants, *v.* 1727 CORP. *et al.*, Defendants-Appellees.

First District (5th Division)   No. 82—2104

Opinion filed December 23, 1983.

Susan E. Loggans & Associates, of Chicago (Susan E. Loggans and Patrick J. Condron, of counsel), for appellants.

Lord, Bissell & Brook, of Chicago (Richard E. Mueller, Hugh C. Griffin, and Mark A. Kreger, of counsel), for appellees.

· JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs Raymond R. Martin, Sr. and Marianne Martin appeal from the granting of a summary judgment in favor of the defendants and they urge that the trial court erred when it held that there were no genuine issues of material fact regarding defendants' liability for the death of their deceased daughter Laura Martin.

Pertinent to the disposition of this appeal are the following facts.

Defendants John and Anne Portman entered into a licensing agreement with McDonald's Systems, Inc. (McDonald's), a wholly owned subsidiary of McDonald's corporation, for the operation of a McDonald's restaurant at 5441 West 159th Street, Oak Forest, Illinois.

The building at that address was a rectangular brick structure with three glass doors in the front, a side door leading to the rest rooms, and a rear metal service door off the kitchen area equipped with a fish-eye peephole through which a person could see the area outside the door. It was built in 1970 pursuant to McDonald's construction department specifications.

The license agreement provided that the restaurant was to be operated pursuant to a McDonald's restaurant operations manual entitled "Cash Register Procedures and Security" which stated, *inter alia,* that "there should be a security window in every back and side door of the restaurant." The manual prohibited use of the back door after dusk and required that all trash be removed only during operating hours and any trash which accumulated after dark could only be removed in the morning by personnel responsible for opening the restaurant.

The restaurant commenced operations in May 1971. In 1974, the Portmans assigned their license to the 1727 Corp., a Delaware corporation, of which John Portman was president and sole shareholder, and the corporation continued to operate the restaurant until October 31, 1979. It was undisputed that contrary to the provisions of the safety manual, defendants required their employees to remove the garbage from the premises every night and the usual practice was for

an employee to open the rear door in order to remove the garbage and that Portman received complaints about the safety and the adequacy of the peephole, but when the original door was replaced, an identical door was installed.

However, it is also undisputed that the restaurant was never robbed during the period of time the Portmans operated the business from May 1971 until October 31, 1979.

Defendants entered into an agreement to sell and transfer all their interest in the restaurant to McDonald's Restaurants of Illinois, Inc. (McDonald's), a wholly owned subsidiary of McDonald's Corporation on October 30, 1979. A meeting was held on October 31, 1979, to effectuate the sale and transfer of possession and control of the premises to McDonald's on the following day. Present at this meeting in addition to Portman, Karl Ferret, the store manager, and other restaurant employees, were McDonald's representative Stephen Zdunek, the operations manager for 16 other McDonald's owned restaurants, and Jim Carlson, McDonald's security supervisor.

During this meeting, both McDonald's representatives discussed McDonald's policy against employees leaving the building after closing until they were off-duty, and personally reviewed store closing procedures with Ferret, the store manager. Zdunek also inspected the rear door of the restaurant, determined that it opened and locked properly but that it did not have a security window. New locks were installed on the doors of the restaurant and new keys were distributed to the store manager at this meeting. Sometime during the first 30 days after the transfer of the business to McDonald's, Carlson made a recommendation that a closable hatch-type security window be installed in the rear door.

Twenty-nine days after McDonald's took over sole possession and control of the premises from defendants, a man named Peter Guy Logan entered through the rear door when an employee went to remove garbage in the evening, and committed a robbery on the premises during which Laura Martin, a McDonald's employee and former employee of Portman-1727 Corp., was killed in the presence of the other McDonald's employees who were on duty that night, including plaintiffs Terese Dudek and Maureen Kincaid.

Plaintiffs brought a wrongful death action on February 8, 1980, which was later consolidated with the two personal injury actions filed by Dudek and Kincaid against defendants McDonald's Restaurants of Illinois; its parent corporation, McDonald's Corporation; MCOPCO Service Company, a wholly-owned subsidiary of McDonald's Corporation; Donald Miller, the restaurant architect; Coleman Fire Proof

Door Company, which installed the rear door; Elmer and Sons Locksmith, Inc., which installed the rear-door burglar bar; Walter Daniels Construction Company, the general contractor on the restaurant; and Portman and 1727 Corp., the former licensees of the business.

On February 19, 1982, 1727 Corp. and Portman moved for summary judgment. Following a hearing, the trial court granted defendants' motion on the basis that, although in some instances a vendor of land may be liable to the vendee for injuries caused by undisclosed defects contained on the land, as a matter of law, the 29-day period which passed between the transfer of possession and the shooting was sufficient for the purchaser to discover and correct all such defects. Plaintiffs appeal from the entry of this order. The case continues below against the remaining defendants.

OPINION

The issue in this case is whether the trial court acted properly in granting defendants' motion for summary judgment.

Section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005) provides in pertinent part that "[a] defendant may, at any time, move with or without supporting affidavits for a summary judgment in his or her favor as to all or any part of the relief sought against him or her. *** The judgment sought shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

It is well established that the summary judgment procedure is an important tool in the administration of justice and its use in a proper case is to be encouraged because its benefits inure not only to the litigants in the saving of time and expenses, but to the community as well as in avoiding congestion of trial calendars and the expenses of unnecessary trials. *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 586, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847; *Wooding v. L & J Press Corp.* (1981), 99 Ill. App. 3d 382, 425 N.E.2d 1055.

However, a summary judgment can only be entered where the pleadings, affidavits, admissions, and depositions demonstrate that no genuine issue of material fact exists which warrants trying the case (*Vuletich v. Alivotvodic* (1979), 73 Ill. App. 3d 927, 392 N.E.2d 663) and that the moving party is entitled to judgment as a matter of law. *Stambaugh v. Central Illinois Light Co.* (1976), 42 Ill. App. 3d 582, 356 N.E.2d 148.

The propriety of awarding summary judgment depends upon whether or not a *bona fide* issue of material fact exists between the parties to the action. If, upon examination of the pleadings and affidavits, it can be fairly said that a material dispute exists as to the facts, a motion for summary judgment should be denied. On the other hand, where the pleadings and affidavits show there is no *bona fide* triable issue of fact, a summary judgment should be granted. *Porter v. Miller* (1960), 24 Ill. App. 2d 424, 429, 164 N.E.2d 601.

Thus, while plaintiffs are not required to prove their case at the summary judgment stage, they are under a duty to present a factual basis which would arguably entitle them to judgment in their favor. *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 1004, 365 N.E.2d 80.

We now address plaintiff's primary argument that genuine issues of material fact remain regarding the allegedly latent or concealed conditions which defendants knew would create an unreasonable risk of harm, and that defendants should have realized that the vendee, McDonald's, would fail to discover or appreciate these risks.

The principles applicable to this case are set forth in sections 352 and 353 of the Restatement (Second) of the Law of Torts, both of which have been acknowledged by our supreme court as stating the law in Illinois. *Century Display Manufacturing Corp. v. D. R. Wager Construction Co.* (1978), 71 Ill. 2d 428, 376 N.E.2d 993; *Sparling v. Peabody Coal Co.* (1974), 59 Ill. 2d 491, 322 N.E.2d 5.

Section 352 of the Restatement sets forth the general rule that the liability of a landowner for injuries occurring in connection with the property ends with the cessation of ownership, possession, and control of the property (*Maisenbach v. Buckner* (1971), 133 Ill. App. 2d 53, 272 N.E.2d 851; *Kordig v. Grovedale Oleander Homes, Inc.* (1958), 18 Ill. App. 2d 48, 151 N.E.2d 470), regardless of whether the person injured is the transferee, or some third person to whom a duty of care is owed. *Kordig v. Grovedale Oleander Homes, Inc.* (1958), 18 Ill. App. 2d 48, 151 N.E.2d 470.

Section 353 of the Restatement creates an exception to this general rule of nonliability, which is applicable when the vendor conceals or fails to disclose to his vendee a condition which poses an unreasonable risk to persons on the land. It provides:

"Sec. 353. Undisclosed Dangerous Conditions Known to Vendor.

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the con-

sent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

   (a) the vendee does not know or have reason to know of the condition or the risk involved, and

   (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions." Restatement (Second) of Torts sec. 353 (1965).

In the instant case, plaintiffs urge that the vendee, McDonald's did not know or have reason to know of two latent or concealed defects: (1) the "serious extent of the dangerous condition of the door"; or (2) of the improper closing procedures that were in effect as a result of the training of defendant Portman.

■ However, to come fully within the scope of the definition of a latent defect, the defect must be hidden from the knowledge as well as from the sight and must be one which could not be discovered by the exercise of ordinary and reasonable care. (*Smith v. Morrow* (1923), 230 Ill. App. 382, 388.) Even assuming *arguendo* that the closing procedures can be properly characterized as an artificial condition of the property under section 353, plaintiffs have failed to present any factual basis for their contention that either the rear door or the closing procedures were a defective or dangerous condition, or that the vendee did not have any knowledge of these "conditions."

This is not the ordinary case where the knowing vendor misleads a naive vendee into believing the premises are safe. The record establishes that vendee-McDonald's, itself, constructed the restaurant and installed an original peephole door pursuant to plans and specifications furnished by its corporate offices and prepared by its construction department.

■ With respect to the door, Stephen Zdunek, McDonald's Operations Manager, stated in his deposition that on October 31, 1979, both he and the McDonald's security manager, Jim Carlson, "went into the store in the early evening and did a full inventory of all assets *** [and] one of the functions that was performed was Jim Carlson and myself reviewing closing procedures, showing the manager we in-

stalled new locks on the doors, and distribution of the keys, changed the safe combination." He stated that he also inspected the rear door and that "during our first 30 days of operation" Carlson "recommended that we put a closed hatch window on that door." He was asked on his deposition: "Was it more common than not that the McDonald's restaurants in [that] area and in the Midwest *** used windows in the back door?" Zdunek replied: "At that time, I would say no. I would say there were more peephole type installations then." Thus, we do not find that the defendants concealed the condition, and the pleadings, interrogatories and depositions do not establish any concealment.

Similarly, although the depositions indicate that the vendee was not informed of the previous closing procedures, when Zdunek was asked whether a change was made in the closing procedure after the takeover occurred, he responded: "I can't say I would be aware that it was a change then. I know Jim [Carlson] and I talked to Karl [Ferret, the Store Manger] that night of the 31st, and we said, 'Here is the procedures. After closing, the store doesn't get opened. Everybody leaves together through the front door.' That's the direction that was given." Irrespective of the former procedure under the licensee we conclude that vendee McDonald's had a reasonable opportunity over that 29-day period to discover any violation of its own explicit instructions as to the closing policy and to implement any disciplinary measures against such violation.

Finally, plaintiffs urge this court to adopt the "New York rule" which extends the rule in section 353 to permit liability to exist even in the case of a known defect where the vendor's liability continues until a sufficient time has elapsed to permit the vendee to remedy it. *Farragher v. City of New York* (1966), 26 App. Div. 2d 494, 275 N.Y.S. 2d 542, *aff'd* (1968), 21 N.Y.2d 756, 235 N.E.2d 218.

In the seminal case on this issue, *Anderson v. Cosmopolitan National Bank* (1973), 54 Ill. 2d 504, 301 N.E.2d 296, our supreme court declared that the New York position does not appear to have found acceptance elsewhere and should not be applied generally to exonerate a vendee from liability for a defective condition of which he was aware. (*Firestone v. R. H. Lincoln, Inc.* (1974), 23 Ill. App. 3d 320, 319 N.E.2d 60.) Hence, we decline the opportunity to extend the New York rule here.

■ We conclude therefore that there was no triable issue of material fact and that defendants were entitled to judgment as a matter of law. We do not further reflect on the vendee's liability in the case at bar pending resolution of this issue in the proceedings below.

██ We note here that we have, in the exercise of our discretion, chosen to consider substantive issues presented by this appeal although appellant failed to include a table of contents in the voluminous record on appeal in the appendix, contrary to Supreme Court Rule 342(a) (87 Ill. 2d R. 342(a); see *In re Marriage of Roberts* (1980), 84 Ill. App. 3d 538, 406 N.E.2d 1), in the interest of doing substantial justice between the litigants and although it is not the duty of this court to search the record to determine what the real issues are or to seek material for the disposition of such issues. See also *Menicocci v. Archer National Bank* (1978), 67 Ill. App. 3d 388, 385 N.E.2d 63.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

WILSON, P.J., and MEJDA, J., concur.