AMY BLAIR, f/k/a/ Amy Bedell, Plaintiff-Appellant and Cross-Appellee, v. ERNEST BLONDIS, Defendant-Appellee and Cross-Appellant.

Third District No. 3—86—0747

Opinion filed September 4, 1987.

John C. Bartler and Lynn R. Price, both of McKenna, Storer, Rowe, White & Farrug, of Wheaton, for appellant.

D. Kendall Griffith, David P. Meyer, and Kathleen T. Zellner, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

Plaintiff, Amy Blair, brought this medical malpractice action seeking damages against defendant, Dr. Ernest Blondis. Plaintiff alleged that the defendant negligently removed a mass in her left breast. The jury returned a verdict in favor of the defendant and plaintiff appeals.

Amy Blair consulted Dr. Ernest Blondis on January 12, 1981, because of problems she was having which included hot flashes, an upset stomach, and general irritability. A physical exam revealed a mass in

the upper outer quadrant of her left breast. The plaintiff testified in her deposition that Dr. Blondis "indicated that he thought it might be cancerous; therefore, I shouldn't wait; that I should go into the hospital immediately and have it taken care of." Mrs. Blair also stated that Dr. Blondis told her that if the mass was cancerous he would have to remove the lump and whatever would go along with it.

Dr. Blondis arranged for her to go to Northlake Hospital the next day, January 13, 1981. A mammogram and ultrasound were performed on Mrs. Blair but the test results were inconclusive. Dr. Blondis told Mrs. Blair that she needed a biopsy. The night before surgery, the plaintiff signed a consent form so that Dr. Blondis could do a frozen biopsy section. Dr. Blondis testified that he performed an "excisional biopsy" and that he so informed the plaintiff.

Plaintiff testified that after she awoke from surgery, a thick dressing had been applied around her chest, covering both breasts. Plaintiff claimed that Dr. Blondis never told her that he was going to excise half her breast or perform an "excisional biopsy." The pathologist reported that the size of the tissue removed was 9 cm. by 9.5 cm. by 1.6 cm. The tissue that was removed was not cancerous. No frozen section or biopsy on a small section of tissue was done before Dr. Blondis removed the large section of tissue. After surgery no one from the hospital informed Mrs. Blair that half her breast had been removed.

The plaintiff first saw her left breast about one week after surgery during an office visit with Dr. Blondis in January of 1981. She testified that she was horrified and depressed about her appearance. Mrs. Blair stated, "As best I can recall, the nipple was stitched up and over. It was totally out of line with the right breast." When she asked Dr. Blondis why she looked the way she did, he replied, "that is because that's the way I had to do it." She discontinued seeing Dr. Blondis at the end of January 1981.

The plaintiff then went to see a plastic surgeon, Dr. Edward Leary, because she was concerned about making her breasts symmetrical. Mrs. Blair requested that Dr. Leary perform reconstructive surgery but he wanted to wait six months before operating on her. Mrs. Blair did not want to wait that long so she decided to consult another plastic surgeon, Dr. Vijay Kumar, in February of 1981. The plaintiff asked Dr. Kumar whether it was necessary to have so much of her breast removed and he said "possibly not."

In late February 1981, Dr. Kumar operated on Mrs. Blair by grafting skin from her arms and legs to the breast. In August 1981, Dr. Kumar again operated on Mrs. Blair to release and center the nipple. In September 1981, Dr. Kumar performed implant surgery to

equalize the size of her breasts.

In mid-1984, Mrs. Blair applied for a variable life insurance policy. Mrs. Blair stated that the insurance agent told her that what was done by Dr. Blondis never should have been done to her. Mrs. Blair then sought legal advice for the first time. Mrs. Blair stated that this was when she first became aware that no frozen section or biopsy on a small section of tissue was done before Dr. Blondis removed the large section of tissue in the "excisional biopsy." Plaintiff filed suit on December 31, 1984, seeking to recover damages for the alleged negligent treatment by Dr. Blondis.

At the time Dr. Blondis operated on Mrs. Blair, she was single and her name was Amy Bedell. She was living with William D. Blair, whom she subsequently married. Before the trial commenced, the trial court granted plaintiff's motion *in limine* to exclude any reference to the fact that the Blairs were living together while unmarried.

Despite this motion *in limine*, during cross-examination defense counsel asked plaintiff if she was married at the time of the surgery. Plaintiff's counsel objected and moved for a mistrial. Defense counsel argued that he brought up the fact that she was unmarried because the name Bedell appeared on hospital records and he had a right to explain the name change to the jury. He also argued that her marriage showed her "good state of mind" following the surgery. The trial court sustained plaintiff's objection but denied the motion for a mistrial. The trial judge then instructed the jury to disregard the question and answer.

In closing argument, defense counsel told the jury that Dr. Blondis is 77 and not quite as sharp as he might have been a few years ago. The trial judge overruled plaintiff's objection to the statement, stating, "Counsel can make reasonable inferences in the evidence. The jury can refuse or not believe based on a review of the evidence." ·

The jury was instructed that the plaintiff had the burden of proving that she filed her cause within the time allowed by law. The jury was given a special interrogatory which stated, "On or before December 31, 1982, did Mrs. Blair know or should she have known that her injury was caused by the wrongful conduct by Dr. Blondis?" The jury answered the interrogatory in the affirmative and found for the defendant and against the plaintiff.

The plaintiff raises three issues on appeal: (1) whether the plaintiff's cause of action was filed within the applicable statute of limitations and whether the burden of proof was properly placed on the plaintiff on this issue; (2) whether defense counsel's violation of an order *in limine* prohibiting him from mentioning the fact that Amy

Blair and William Blair were unmarried and living together at the time of the surgery constitutes reversible error; and (3) whether defense counsel made improper remarks during closing arguments.

■ Initially, plaintiff argues that the burden of proof on the statute of limitations issue was improperly placed on the plaintiff. Plaintiff argues that the general rule is that the burden of establishing a statute of limitations defense is on the party asserting it. Defendant argues, and we agree, that the plaintiff has burden of proving the date of discovery when seeking to come within the "discovery" exception to the statute of limitations. *Society of Mt. Carmel v. Fox* (1980), 90 Ill. App. 3d 537, 413 N.E.2d 480.

■ ■ Plaintiff next argues that her cause of action was filed within the applicable statute of limitations because she did not know that her injury was wrongfully caused until mid-1984, when an insurance agent informed her that her surgery was unnecessary. Plaintiff argues that the applicable two-year statute of limitations (Ill. Rev. Stat. 1985, ch. 110, par. 13—202) has been construed to mean that a cause of action accrues when the plaintiff knows or reasonably should know that the injury was caused by the wrongful acts of another. (*Marciniak v. O'Connor* (1981), 102 Ill. App. 3d 381, 430 N.E.2d 536.) Plaintiff claims that although she was disappointed with the result of her surgery, she did not know that Dr. Blondis was at fault for her physical condition until six months before she filed suit.

The statute of limitations for medical malpractice cases provides in part:

> "No action for damages for injury or death against any physician *** shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known *** of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death except as provided in Section 13—215 of this Act." (Ill. Rev. Stat. 1985, ch. 110, par. 13—212.)

The discovery rule as applied to medical malpractice actions means the cause of action does not accrue in the sense of triggering the statute of limitations until a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. (*Witherell v. Weimer* (1981) 85 Ill. 2d 146, 421 N.E.2d 869.) At that point the burden is on the injured person to in-

quire further as to the existence of a cause of action. (*United States v. Kubrick* (1979), 444 U.S. 111, 62 L.Ed.2d 259, 100 S. Ct. 352.) If the time at which an injured party knows or reasonably should have known both of his injury and that it was wrongfully caused is a disputed question, it is to be resolved by the finder of fact. *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450.

In the case at bar, the plaintiff testified that she was horrified and felt disfigured when she first saw her left breast after the surgery. She stated that she noticed that tissue was missing and that there was a surgical scar. Plaintiff then decided to seek the advice of a plastic surgeon, Dr. Leary, because "she couldn't live with herself because of the way she looked." We find that it is clear from plaintiff's testimony that she was aware of her injury or reasonably should have been aware of her injury when the bandages were removed and she observed the condition of her breast approximately one week after surgery in January of 1981.

When plaintiff saw Dr. Leary, he told her that he wanted to wait six months before performing reconstructive surgery. Plaintiff stated that she could not wait that long and therefore she consulted another plastic surgeon, Dr. Vijay Kumar. Dr. Kumar told the plaintiff that it was possible that Dr. Blondis should not have removed so much tissue. After Dr. Kumar performed reconstructive surgery, in February of 1981, he told the plaintiff that it appeared that Dr. Blondis had taken the muscle from her breast and had thrown it away. We find that plaintiff's extreme dissatisfaction with the results of the surgery, her immediate attempt to have reconstructive surgery performed, and the conversations with Dr. Kumar about her condition should have reasonably put her on notice that her injury was wrongfully caused, thereby triggering the statute of limitations.

■ We find that at the very latest, the statute of limitations in the instant case began to run in February of 1981, and plaintiff's failure to file her action within two years of that date means her action was time barred. Accordingly, we hold that there was sufficient evidence to support the jury's finding that plaintiff's cause of action was barred by the statute of limitations.

Although we need not address the other issues raised by plaintiff due to our disposition of the limitations issue, we feel compelled to address the issue concerning defense counsel's violation of a motion *in limine* during the trial. Defense counsel argues that he asked the plaintiff whether she was married at the time of the surgery because the name Bedell appeared on the hospital records and he had a right to explain the name change to the jury. He also argued that her mar-

riage showed her "good state of mind" following the surgery. The trial court sustained plaintiff's objection, finding that the question was a clear violation of the motion *in limine* intended to antagonize the jury against the plaintiff. We agree that defense counsel's question was a willful and flagrant violation of the trial court's order on plaintiff's motion *in limine*. We find defense counsel's behavior to be inexcusable and was perilously close to being a violation of the Code of Professional Responsibility. (107 Ill. 2d R. 7—106(c)(2).) Since the trial court made no such finding and was in a better position to make such judgment than a court of review, we make no such formal finding.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

HEIPLE and STOUDER, JJ., concur.