BETSY RUKLICK *et al.*, Plaintiffs-Appellants, v. JULIUS SCHMID, INC., *et al.*, Defendants-Appellees.

First District (2nd Division) No. 87—2370

Opinion filed May 10, 1988.

1100

Nathanson & Wray, of Chicago (Philip J. Nathanson and Mary E. Doherty, of counsel), for appellants.

Latham & Watkins and Pretzel & Stouffer, Chartered, both of Chicago (William J. Gibbons, David G. Gregg, Carole Randolph, David J. Loughane, Robert Marc Chemers, and Michael G. Bruton, of counsel), for appellees.

JUSTICE STAMOS* delivered the opinion of the court:

Plaintiffs Betsy Ruklick and Joseph Ruklick, her husband, appeal from orders dismissing with prejudice their personal-injury negligence and product-liability complaint, refusing to vacate the dismissal order, and denying them leave to file an amended complaint. Defendants Julius Schmid, Inc., Schmid Products Company, and Schmid Laboratories, Inc. (collectively the Schmid defendants), are the product-liability defendants, and defendant David Cromer, M.D., is the physician of whose alleged malpractice plaintiffs complain. The dismissed complaint had been refiled within one year after voluntary dismissal of plaintiffs' previous complaint, which itself had represented their fourth amendment of their original complaint. The dismissal with prejudice was entered after defendants raised a statute-of-limitations de-

---

*This opinion was prepared and concurred in prior to the resignation of Justice Stamos from the court.

fense. The amended complaint that the circuit court then denied leave to file would have been plaintiffs' seventh attempt to plead their cause of action, though only the second through their present counsel.

The issues are:

> (a) Whether exercise, within one year after an unappealed voluntary dismissal, of plaintiffs' right to refile should have operated to prevent defendants from pleading the statute of limitations as to the refiled complaint.

> (b) If not, whether plaintiffs' complaint as refiled was barred by the terms of the statute of limitations.

> (c) If so, whether the trial court abused its discretion in denying plaintiffs leave to file an amended complaint.

## FACTS

In 1981, plaintiffs filed a complaint for personal injuries to plaintiff Betsy Ruklick (plaintiff) allegedly arising from manufacture and sale of a defective and unreasonably dangerous intrauterine device (IUD) and its use by plaintiff at the negligent instance of defendant Cromer. After plaintiffs' fourth amended complaint was filed, they secured its voluntary dismissal on May 25, 1984. Thereafter, on May 24, 1985, they refiled their complaint through new counsel.

The fourth amended complaint alleged that as a result of the defective IUD, plaintiff developed an abdominal infection that caused her to undergo a hysterectomy on November 22, 1980, and to contract toxic shock syndrome in that month. The fourth amended complaint also alleged that Cromer had treated plaintiff from July 2, 1971, through 1980; that he prescribed and inserted the IUD on July 2, 1971; that plaintiff continued to use it pursuant to his advice through November 22, 1980; that at all time prior to that date plaintiff did not know or have reason to know that the IUD was defective; that from July 1971 through November 22, 1980, Cromer was guilty of negligently failing to remove the IUD, failing to treat plaintiff properly for complications resulting from its use, and failing to inform plaintiff that she was suffering complications and pelvic inflammatory disease from use of the IUD; that plaintiff discovered her pelvic disease in February 1976; and that "as a result of said defective and unreasonably dangerous condition" plaintiff developed an abdominal infection that caused her to undergo a hysterectomy on November 22, 1980. Plaintiff's husband also claimed for loss of consortium.

Plaintiffs' 1985 refiled complaint alleged that in July 1971 and thereafter, plaintiff was treated by Cromer, who negligently performed numerous acts related to her treatment and the IUD, as a

result of which she suffered pelvic inflammatory disease and abdominal infection that caused her to require extensive medical care on November 22, 1980. The refiled complaint also alleged that plaintiff initially sued Cromer on October 13, 1982, "within the applicable statute of limitation," and that on May 25, 1984, plaintiffs secured voluntary dismissal of their complaint. The refiled complaint also alleged that Schmid defendants' manufacture and sale of the IUD prior to May 1971, resulting in plaintiff's disease and treatment on November 22, 1980. The refiled complaint also alleged that plaintiffs initially sued the Schmid defendants on July 2, 1981, "within the applicable statute of limitations," and that on May 25, 1984, they secured voluntary dismissal. Plaintiff's husband's loss-of-consortium claims were also included.

Defendants filed motions to dismiss the refiled complaint on statute-of-limitations grounds. After response by plaintiffs, the trial court dismissed their refiled complaint with prejudice. After plaintiffs moved to vacate the dismissal with prejudice and allow filing of an amended complaint, and after Cromer's response to the motion and a hearing, the trial court denied the motion. This timely appeal followed.

OPINION

I. REFILING'S EFFECT ON STATUTORY LIMITATIONS

Plaintiffs contend that, because defendants did not appeal or otherwise object when plaintiffs procured a voluntary dismissal order as to their fourth amended complaint, defendants were subsequently precluded from raising the statute of limitations as a bar when plaintiffs exercised their right to refile their complaint within one year after the voluntary dismissal. Particularly in view of the statutory language conferring on plaintiffs their right to refile, the statement of their contention almost provides its own refutation. Existing case law dispels any remaining doubt.

■ Plaintiffs' right to refile within one year arises from the following pertinent language in section 13—217 of the Code of Civil Procedure (the Code):

"In the actions specified in Article XIII of this Act or any other act or contract where the time for commencing an action is limited, if *** the action is voluntarily dismissed by the plaintiff, *** then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff, his or her heirs, executors or administrators may com-

mence a new action within one year or within the remaining period of limitation, whichever is greater, *** after the action is voluntarily dismissed by the plaintiff ***." (Ill. Rev. Stat. 1985, ch. 110, par. 13—217.)

Included among actions specified in article XIII of the Code and relevant to the case at bar are malpractice actions against physicians and product-liability actions based on strict tort liability. Ill. Rev. Stat. 1985, ch. 110, pars. 13—212, 13—213.

Nothing in section 13—217 states that its one-year extension of the filing period for certain actions immunizes those actions from the operation of an otherwise applicable statutory limitation period that had already expired before their original filing. Neither does anything in section 13—217 purport to preempt a defendant's right to plead the preexisting bar of such a statutory limitation period once a refiling in accordance with section 13—217 has occurred.

The courts understandably have seldom been obliged to pass on this curious point, but those called on to consider it have invariably declined to construe section 13—217 as plaintiffs now urge the court to do.

As early as 1954, this court held that where the time prescribed by a Federal housing act for filing suit had expired before the first action was ever filed, bringing a second action within one year after the first action's dismissal did not toll the statute of limitations. (*Meyer v. Dimas* (1954), 3 Ill. App. 2d 117, 120 N.E.2d 571 (abstract of opinion).) While involving an issue as to whether an original "action" had been an action at all, rather than whether such an action must have been filed within the limitation period in order to be refilable, the opinion in *Bavel v. Cavaness* (1973), 12 Ill. App. 3d 633, 299 N.E.2d 435, observed that the precursor to section 13—217 "pre-supposes an old or prior action filed within the original limitation period." *Bavel*, 12 Ill. App. 3d at 637, 299 N.E.2d at 438.

Further persuasive authority in this regard is provided by *Perkins v. Hendrickson Manufacturing Co.* (7th Cir. 1979), 610 F.2d 469, which construed the precursor of section 13—217 as providing a plaintiff no benefit if the statutory limitation period had expired before the first action was ever filed. (*Perkins*, 610 F.2d at 470; accord *King v. Nashua Corp.* (E.D. Mo. 1984), 587 F. Supp. 417, 418.) And, as this court noted in *Phillips v. Elrod* (1985), 135 Ill. App. 3d 70, 478 N.E.2d 1078, the precursor of section 13—217 allowed a wrongful-death plaintiff to refile within one year of dismissal where the plaintiff had fulfilled the condition precedent by filing her original suit within two years of the accrual of her cause of action as required by

the wrongful-death statute. (*Phillips*, 135 Ill. App. 3d at 72, 478 N.E.2d at 1080-81, citing *Kristan v. Belmont Community Hospital* (1977), 51 Ill. App. 3d 523, 526-27, 366 N.E.2d 1068, 1070-71.) Quite apart from such case law as directly addresses the point, the clear implication of both *Phillips* and of section 13—217's own language is that it does not provide a plaintiff with a safe harbor in which to ride out even belated efforts by a defendant to invoke a limitation period that had expired before the plaintiff ever filed her first complaint.

The present plaintiffs argue, however, that by treating certain voluntary dismissal orders as appealable in *Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302, 472 N.E.2d 787, and *Dillie v. Bisby* (1985), 106 Ill. 2d 487, 478 N.E.2d 1338, the supreme court effectively imposed a duty on defendants to appeal the voluntary dismissal order in the case at bar on statute-of-limitations grounds rather than await plaintiffs' refiling before moving to dismiss on such grounds. Yet neither *Kahle* nor *Dillie* lends itself to such an interpretation.

In *Kahle*, refiling had occurred before another judge in another county, and if the defendants could not appeal the first judge's voluntary dismissal order on grounds that trial or hearing had already begun when it was entered, no court could review the order, since the second trial judge had no such jurisdiction, the second case was a separate case, and the plaintiffs neither could appeal nor would desire to appeal from the voluntary dismissal order in the first case. (*Kahle*, 104 Ill. 2d at 306, 472 N.E.2d at 789.) In *Dillie*, the defendants appealed from a voluntary dismissal order and from denial of their motion for a dismissal with prejudice on grounds that the plaintiff had shown a lack of diligence by not effecting service on them until more than 10 months after the limitation period had run. The supreme court followed *Kahle* and held that the defendants could appeal. *Dillie*, 106 Ill. 2d at 490-91, 478 N.E.2d at 1340.

■■ ■ In both *Kahle* and *Dillie*, defendants' right to appeal was based on the fact that they had raised issues that arguably demonstrated prejudice to them from the voluntary dismissals. Moreover, each issue being peculiar to the history of its case, it could not be raised again in the second case. In the case at bar, however, the statute-of-limitations issue raised by defendants was not peculiar to plaintiffs' first case but is equally cogent in this second, refiled case, and the voluntary dismissal order consequently caused defendants no prejudice. Not only would it have been unnecessary for defendants to appeal from the voluntary dismissal order in plaintiffs' first case in order ultimately to have an adjudication of their statute-of-limitations defense, but until plaintiffs chose to refile their complaint there was

also no practical reason for defendants to invest resources in mounting such a defense. Meanwhile, plaintiffs' theory of *Kahle* and *Dillie* would, if accepted, convert a defendant's right in some cases into an obligation in all cases, with no authority for such a view in the language of either opinion.

Accordingly, we reject plaintiffs' contention that the refiling of their complaint should have operated to preclude defendants from raising a statute-of-limitations defense to the complaint as refiled.

## II. EFFECT OF LIMITATIONS STATUTE ON REFILED COMPLAINT

Plaintiffs' second contention is that their refiled complaint was not barred by statutory limitation periods and that the trial court should not have dismissed it on such a ground.

■■ ■ Personal-injury damage actions against any physician, dentist, registered nurse, or hospital, whether based on tort, on breach of contract, or otherwise, arising out of patient care, must under section 13—212 of the Code be brought within two years after

> "the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury *** for which damages are sought in the action, whichever of such date [*sic*] occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury *** except as provided in Section 13—215 of this Act." (Ill. Rev. Stat. 1985, ch. 110, par. 13—212.)

Section 13—212 further provides that its limitation period does not begin to run until any specified disability affecting the claimant is removed.

In addition, section 13—215 of the Code provides as follows:

> "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." Ill. Rev. Stat. 1985, ch. 110, par. 13—215.

■■ ■ For product-liability actions based on the doctrine of strict liability in tort, section 13—213(b) of the Code provides a maximum period of 12 years from the date of first sale or delivery of possession by a seller, or 10 years from the date of first sale or delivery of possession to an initial user, consumer, or other nonseller, whichever period expires earlier, in which to file suit, unless the period is extended

by warranty or promise of the defendant. (Ill. Rev. Stat. 1985, ch. 110, par. 13—213(b).) Section 13—213(c) of the Code extends the filing period to 10 years after a post–sale seller-related alteration of the product unit for actions claiming injury from such alteration. (Ill. Rev. Stat. 1985, ch. 110, par. 13—213(c).) In addition, section 13—213(d) of the Code provides that, if injury occurs within one of the foregoing filing periods, a product-liability action based on strict tort liability may be brought within two years after a plaintiff knows or through reasonable diligence should have known of the injury but that in any event the action must be brought within eight years after the injury occurred, except that the limitation period does not begin to run until removal of specified disabilities. (Ill. Rev. Stat. 1985, ch. 110, par. 13—213(d).) Subsection (g) of section 13—213 applies the section to any cause of action accruing on or after January 1, 1979, involving any product that was in or entered the stream of commerce before, on, or after that date. Ill. Rev. Stat. 1985, ch. 110, par. 13—213(g).

Plaintiffs contend that the limitation periods set by present law should not begin to run until November 1980, when plaintiff allegedly first acquired knowledge, through the statements of physicians while she was hospitalized, that her injury was wrongfully caused by use of the IUD. Under the "discovery rule" on which plaintiffs rely, the limitation periods for product-liability and medical-malpractice actions begin to run "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. At that point the burden is upon the injured person to inquire further as to the existence of a cause of action." (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874.) Since plaintiffs originally sued Cromer by October 1982 and the Schmid defendants by July 1981, their complaint would have been within the limitation periods if their theory as to the commencement of the periods is accepted. Accordingly, they argue, their refiled complaint should not have been dismissed, since it was based on a complaint that itself was timely.

The time when a plaintiff knew or should have known of her injury and its wrongful causation is ordinarily a question for the trier of fact, though where it is apparent from the undisputed facts that only one conclusion can be drawn, it is a question for the court. (*Witherell*, 85 Ill. 2d at 156, 421 N.E.2d at 874; *Blair v. Blondis* (1987), 160 Ill. App. 3d 184, 189, 513 N.E.2d 157, 160.) When a defendant raises a statute-of-limitations issue, a plaintiff must set forth facts sufficient to avoid the statute's effect. (*Cuerton v. American Hospital Supply Corp.* (1985), 136 Ill. App. 3d 231, 237, 483

N.E.2d 187, 191.) A plaintiff has a burden of specifically pleading facts showing that the action was brought within the limitation period. (*Zagar v. Health & Hospitals Governing Comm'n* (1980), 83 Ill. App. 3d 894, 897, 404 N.E.2d 496, 499; *Kielminski v. St. Anthony's Hospital* (1979), 68 Ill. App. 3d 407, 408, 386 N.E.2d 326, 327.) When a plaintiff seeks to avail herself of the discovery-rule exception to an otherwise applicable limitation period, she has the burden of proving the date of discovery. *Blair v. Blondis* (1987), 160 Ill. App. 3d 184, 188, 513 N.E.2d 157, 159.

 Plaintiffs' refiled complaint merely stated without citing a date that plaintiff suffered severe pelvic inflammatory disease and abdominal infection as a result of Cromer's alleged negligence "in July, 1971, and thereafter" and that this caused her to require medical care in November 1980. As to the Schmid defendants, the refiled complaint stated that they manufactured and distributed the IUD to Cromer prior to May 1971, that it was unreasonably dangerous, and that as a result plaintiff developed disease and infection that required medical attention in November 1980. The complaint thus not only failed to specify dates of injury (except for the November 1980 medical treatment) but failed to specify any date on which plaintiff discovered her injury or its allegedly wrongful causation.

Plaintiffs attempt to explain these omissions by reference to their *Kahle-Dillie* theory and by contending that, if they had pleaded their refiled complaint more specifically, they might have waived their theory, which was that they were absolved from the otherwise applicable statutes of limitations and thus from any duty of specific pleading by the fact of their refiling after defendants had failed to appeal from the voluntary dismissal order. As already urged, their *Kahle-Dillie* theory is unfounded, and equally so is their argument that complying with normal pleading requirements would have waived such a theory.

Meanwhile, Cromer had moved to dismiss the refiled complaint on statute-of-limitations grounds, as had the Schmid defendants. In reply to the dismissal motions, plaintiffs merely restated their *Kahle-Dillie* theory and its supposed restraints on their ability to plead their cause of action more specifically as to injury or discovery dates. In a footnote, however, they alternatively contended that they would be entitled to amend their complaint and plead the discovery rule if the trial court were to disagree with their *Kahle-Dillie* theory. At the hearing on the dismissal motions, plaintiffs made essentially the same argument but introduced or cited no evidence or statement of facts that would undergird a discovery-rule amendment or resist the dismissal motions, even though they did request leave to amend to plead the dis-

covery rule if the court were inclined to grant the dismissal motions.

While plaintiffs brought nothing before the court except their *Kahle-Dillie* theory to resist the dismissal motions, the motions themselves relied on a February 1976 disease discovery date pleaded in two counts of plaintiffs' voluntarily dismissed "Fourth Amended Complaint" that complained of Cromer. Cromer's dismissal motion pointed out that the current (refiled) complaint itself alleged no discovery date other than the November 1980 surgery but that the 1976 date had been pleaded in the previous complaint and that more than four years elapsed between that date and the 1981 date on which Cromer was first impleaded by plaintiffs. The Schmid defendants' dismissal motion made a similar argument. According to Cromer's memorandum of law in support of his dismissal motion, when a plaintiff fails to plead facts demonstrating that causes of action are not time barred, a court is to assume that the statute began to run "on the date of the involved treatment," which Cromer considered to be at latest the discovery of pelvic disease in February 1976 and perhaps as early as the July 1971 beginning of his treatment of plaintiff.

■■■ These arguments by defendants were faulty in two respects. First, they derive an alleged 1976 discovery date from the pleadings filed in the previous, voluntarily dismissed action, which were not *sub judice* in the second case. Second, although defendants focus on the February 1976 discovery of pelvic diseases pleaded in plaintiffs' voluntarily dismissed fourth amended complaint, they overlook other portions of that complaint, which alleged the November 1980 surgery to be a result of the allegedly defective IUD and which alleged that Cromer's treatment of plaintiff continued through 1980, during which time he was said negligently to have failed to remove the IUD, to treat plaintiff properly for the complications allegedly resulting from its use, or to inform plaintiff that the complications resulted from use of the IUD. At most, the combination of these allegations with plaintiffs' pleading the 1976 pelvic disease discovery date presented a fact question as to when plaintiff discovered or should have discovered her injury and its wrongful causation—a question not appropriately resolvable as a matter of law by the trial court. See *Witherell*, 85 Ill. 2d at 156, 421 N.E.2d at 874; *Blair*, 160 Ill. App. 3d at 189, 513 N.E.2d at 160.

Even though there was nothing in the refiled complaint or plaintiffs' response to defendants' dismissal motions that would show plaintiffs' claims not to be barred by the applicable limitations statutes if the limitation period began to run in 1976, the statute-of-limitations defense had not been asserted in the second case until the dis-

missal motion was filed; thus, until then no duty on plaintiffs' part in the second case to plead specifically in avoidance of the limitations defense had yet been triggered.[1] Even though the refiled complaint was sketchy as to the period between the 1971 IUD prescription and the 1980 surgery, if defendants were unwilling to permit plaintiffs to rely on their chronologically more detailed pleading in the first case as specifically answering the statute-of-limitations defense, then defendants should not have been permitted to rely on their own statute-of-limitations filings in the first case to raise that defense and trigger an asserted duty of more specific pleading in the second case. The faulty premises of the dismissal motions as to plaintiffs' discovery date mean that the trial court erred in granting the motions and dismissing plaintiffs' refiled complaint—particularly since, under section 2—612 of the Code, if any pleading is insufficient in substance or form the court may order a fuller or more particular statement. Ill. Rev. Stat. 1985, ch. 110, par. 2—612.

If pleadings in the voluntarily dismissed first case were to be considered by the court in the second case, the record disclosed the basis for a factual dispute as to the proper application of the discovery rule. It was improper for the trial court to resolve this factual issue as a matter of law. In addition, the refiled complaint did not on its face implicate a statute-of-limitations defense, and defendants' attempt to dismiss the refiled complaint on the basis of plaintiffs' pleadings in the earlier case ignored some of the contents of those same pleadings that raised the factual issue as to discovery date.

Despite the fact that plaintiffs purposely refrained from detailing in their refiled complaint the dates that might have avoided the limitations statute that defendants thereafter invoked through their dismissal motion, plaintiffs explained their reason (though misguided) for so refraining, and in any event at the time the refiled complaint was presented there had yet been no statute-of-limitations defense raised in the second case that plaintiffs would be required to meet, and the refiled complaint initially appeared to satisfy the limitations statute. Thus, we hold that the trial court erred in dismissing plaintiffs' refiled complaint rather than requiring them to replead more specifically.

---

[1]Since the only specific injury date pleaded in the refiled complaint (other than the 1971 sale and fitting of the IUD and the treatment by Cromer in 1971 "and thereafter") was that of plaintiff's 1980 treatment, and since that complaint also alleged that the previous complaint had been filed in 1981 and 1982, "within the applicable statute of limitations," nothing on the face of the refiled complaint clearly indicated a limitations bar. On the contrary, until defendants filed their dismissal motion the refiled complaint appeared to satisfy the statute of limitations.

## III. DENIAL OF LEAVE TO AMEND

Plaintiffs next contend that the trial court abused its discretion in denying them leave to file an amended complaint.

Defendants argue that the court had no authority under section 2—616(a) of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(a)) to allow amendment after entering a final judgment on plaintiffs' refiled complaint and that there was no proof in the record to which any amendment might make the complaint conform under section 2—616(c) of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(c)). Defendants also argue that the tendered amended complaint would not have cured defects in the refiled complaint and that both its status as plaintiffs' seventh attempt to plead their cause of action and the fact that they had intentionally refrained from pleading the discovery rule in the refiled complaint make the trial court's denial of leave to amend reasonable rather than an abuse of discretion.

■■ ■ Decisions as to granting or denying leave to amend a complaint generally are within the court's sound discretion. (*Schenker v. Chicago Title & Trust Co.* (1984), 128 Ill. App. 3d 488, 491, 470 N.E.2d 1264, 1267.) Only a manifest abuse of such discretion will be reviewed on appeal. (*Lowrey v. Malkowski* (1960), 20 Ill. 2d 280, 285, 170 N.E.2d 147, 150, *cert. denied* (1961), 365 U.S. 879, 6 L. Ed. 2d 191, 81 S. Ct. 1029.) However, leave to amend a complaint should be granted unless it is apparent that even after amendment no cause of action can be stated. (*Juhasz v. Hejna* (1985), 139 Ill. App. 3d 35, 38, 487 N.E.2d 113, 115.) The provisions of the Code are to be liberally construed, to the end that controversies be determined according to the substantive rights of the parties. Ill. Rev. Stat. 1985, ch. 110, par. 2—106; *Ruff v. Northwestern Memorial Hospital* (1987), 159 Ill. App. 3d 811, 818, 513 N.E.2d 7, 11.

■■ As defendants argue, once a final judgment of dismissal with prejudice was entered on plaintiffs' complaint, there was no authority under section 2—616 of the Code for the court to allow their proffered amendment to be filed. (*Ketcham v. Consolidated Rail Corp.* (1986), 146 Ill. App. 3d 196, 202-03, 496 N.E.2d 1104, 1108; *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 740, 435 N.E.2d 877, 882.) However, had the court first vacated its judgment as plaintiffs requested, there would then have been no impediment to allowing the filing of the amended complaint. Furthermore, if, as we have held, the judgment of dismissal was improperly entered to begin with, the amendment issue is subsumed by the trial court's opportunity to require more specific pleading. See Ill. Rev. Stat. 1985, ch. 110, par. 2—612.

The Schmid defendants cite *Schenker v. Chicago Title & Trust Co.*

(1984), 128 Ill. App. 3d 488, 492, 470 N.E.2d 1264, 1267, for the proposition that ordinarily an amendment should not be permitted to include matters of which the pleader had full knowledge when the original complaint was drafted and no excuse is presented for not putting their substance in the original pleading. However, not only did the present plaintiffs present an "excuse" (their ill-founded *Kahle-Dillie* theory), but also the *Schenker* opinion went on to state that an amendment will be allowed where justice is not served by denying leave to amend and that doubts should be decided in favor of allowing the amendment. *Schenker*, 128 Ill. App. 3d at 492, 470 N.E.2d at 1267.

Despite the Schmid defendants' citation of *Knox College v. Celotex Corp.* (1983), 117 Ill. App. 3d 304, 307, 453 N.E.2d 8, 10, for the statement that "[b]ecause the plaintiff failed to offer an amended complaint prior to entry of the final order dismissing the complaint with prejudice, it is now in no position to challenge the dismissal," in *Knox* 15 days elapsed between the court's initial memorandum opinion indicating dismissal with prejudice and the court's final order of dismissal. The *Knox* plaintiffs should have offered an amended complaint or sought reconsideration in that time; however, in the case at bar, there was no such opportunity for plaintiffs to offer an amended complaint between the time the court signified its intention to dismiss with prejudice and the actual order so dismissing. In fact, at the hearing on the dismissal motions, the present plaintiffs asked the court to allow amendment if it were inclined to grant the motions, but the court did not respond to that request and simply dismissed with prejudice.

 █ Defendants urge that the proposed amended complaint would not have cured pleading defects, since the complaint would still allege that Cromer treated plaintiff through November 1980 but would not state when during that period his alleged negligence occurred or when she knew or should have known of her injury. However, contrary to defendants' assertions, the proposed amended complaint would have identified the November 1980 surgery as the date on which plaintiff discovered the wrongful cause of her injury. Moreover, the proposed amended complaint would have specified three dates in 1976 and 1977 when Cromer's alleged negligence was said to have occurred. These dates would apparently have fallen within the four-year period prior to plaintiffs' first complaint against Cromer. Therefore, even if alleging continued treatment through November 1980 were not sufficiently specific in the face of Cromer's attempt to invoke the statute of limitations, the additional specificity of the pro-

posed amended complaint as to dates would have justified the allowance of its filing.

It is true that the proposed amended complaint would have constituted plaintiffs' seventh attempt to plead their cause of action. However, it is equally true that it would have represented only the second attempt by their present counsel. Such laxity and delay in pleading should not be favored, and plaintiffs do not have an absolute and unlimited right to amend (*Lakeside Villas Homeowners Association, Inc. v. Zale Construction Co.* (1986), 145 Ill. App. 3d 505, 509, 495 N.E.2d 1100, 1102), but the primary consideration is whether amendment would further the ends of justice, and among factors to be considered are whether the proposed amendment would cure the defective pleading, whether it could prejudice or surprise the other party, its timeliness, and whether previous opportunities to amend occurred. (*Lakeside,* 145 Ill. App. 3d at 509, 495 N.E.2d at 1102.) Here, the proposed amendment would apparently cure the pleading defect; it would certainly not prejudice or surprise defendants, who have been aware at least since the voluntarily dismissed complaint of the gravamen of plaintiffs' cause of action; the proposed amendment was offered within 30 days of the dismissal with prejudice and in part restates matters that had been pleaded in earlier complaints; and, consistently with plaintiffs' misbegotten *Kahle-Dillie* theory, there was no earlier opportunity to amend the pleading than when the court rejected the theory at the moment it was dismissing with prejudice.

Accordingly, while regretting the series of inadequate pleadings that have characterized this case, we hold that, even if its dismissal judgment had been initially proper, the trial court would have abused its discretion in denying plaintiffs' motion to vacate the dismissal with prejudice and to allow filing of their amended complaint.

CONCLUSION

We reverse the orders appealed from and remand this cause to the circuit court of Cook County with instructions to allow the filing of plaintiffs' proposed amended complaint.

Reversed and remanded.

BILANDIC and SCARIANO, JJ., concur.