WILLIAM T. REGAS, Plaintiff-Appellant, v. ASSOCIATED RADIOLOGISTS, LTD., Defendant-Appellee.

First District (3rd Division)   No. 1—90—1973

Opinion filed June 17, 1992.

Law Offices of William T. Regas, of Park Ridge, for appellant.

Craig E. Anderson and Charles J. Corrigan, both of Jacobson, Brandvik & Anderson, of Chicago, and Donald L. Padgitt, of Padgitt & Williams, Ltd., of Winnetka, for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff, William T. Regas, an attorney, filed a complaint for money damages due to defects discovered in the subroof of a building he had purchased from defendant, Associated Radiologists, Ltd., an incorporated group of doctors. Plaintiff now appeals the circuit court's orders which (1) granted defendant's motion for summary judgment; (2) denied plaintiff's motion for reconsideration or rehearing to vacate summary judgment; and (3) denied plaintiff's motion to file a third amended complaint.

For the reasons which follow, we affirm the orders of the circuit court.

On August 9, 1982, plaintiff purchased a commercial office building from defendant. When plaintiff began to remodel the building, he removed portions of the ceiling and found the subroof in rotting condition. Plaintiff alleges that the defects could not be discovered from a visual inspection of the building because the subroof was above the ceiling as viewed from the inside and under the exterior roof as viewed from the outside of the building.

Defendant refused to pay for or reimburse plaintiff for the cost of the roof repairs caused by water leakage and plaintiff brought this cause. Thereafter, he filed a three-count second amended complaint seeking an injunction (count I), specific performance (count II), and money damages (count III). Counts I and II have been dismissed by an agreed order. Only count III for money damages is at issue.

Count III of plaintiff's second amended complaint contains allegations that plaintiff discovered the "rotten and broken condition" of the subroof during the course of remodeling, that this was a latent defect that could not have been discovered by reasonable inspection, and that defendant knew or should have known of the condition and made disclosure to plaintiff.

The property at issue is improved with a commercial office building which was purchased by defendant in 1979. Around April 1981 defendant ceased its business operation on the subject premises but a tenant, Dr. Bora, continued his dental practice in a portion of the building.

In January 1982 plaintiff first visited the building as a prospective buyer. Thereafter, defendant solicited sealed bids from plaintiff and Dr. Bora, both having expressed an interest in purchasing the premises. In February 1982 defendant accepted plaintiff's sealed bid to purchase the building and gave a set of keys to plaintiff. On March 11, 1982, plaintiff and defendant executed a real estate contract and on June 21, 1982, the parties entered into an installment agreement for warranty deed. The transaction closed August 9, 1982.

In his deposition, plaintiff testified that he went to the building on the average of two times a week from the time defendant accepted his purchase bid in February. Also in February, Dr. Sam Mulopulos, the president and a shareholder of defendant, called plaintiff to notify him that Dr. Bora had made a serious complaint about a leaking roof and that repairs were going to be made. Dr. Mulopulos suggested that plaintiff meet with the roofer who would be doing the repairs. Plaintiff and Dr. Mulopulos had been friends over 30 years.

The roofing contractor told plaintiff that the entire roof was "in serious shape" but he was only authorized to replace the roof over Dr. Bora's portion of the building. In turn, plaintiff told one of the principals of defendant that the balance of the roof should also be replaced and asked if defendant would pay for the repairs as part of the sales price. Defendant refused and plaintiff then contacted a structural engineer who inspected the exterior portion of the roof and determined it was fine. Plaintiff never sought to withdraw his purchase offer based on the condition of the building or rescind the agreement.

From February until August, plaintiff was at the building between two dozen and three dozen times. At various times, plaintiff was accompanied by the roofing contractor who replaced the roof over Dr. Bora's portion of the building, an electrician, a structural engineer, an architect, numerous general contractors and subcontractors, including another roofer who thought the general condition of the roof was reasonable. Defendant agreed to give plaintiff the warranty on the roof repairs done on Dr. Bora's portion of the building.

The day before closing, plaintiff discovered a leak which plaintiff assumed to originate from a crack at the point where the roof meets the wall. Plaintiff mentioned this discovery at the closing but never suggested that he wanted to delay the closing to investigate the leak and did not request any holdback from the purchase price to be available to pay for roof replacement or repairs.

Subsequently the defective subroof was exposed when the ceiling was removed during plaintiff's remodeling.

During his numerous visits to the building prior to closing, plaintiff acknowledged that he paid no attention to any discoloration of the ceiling or walls because he had always planned to remodel. In addition, due to his experience in owning other buildings, he was aware of problems associated with flat roofs.

In his deposition, Dr. Mulopulos testified that at the time the roof over Dr. Bora's portion of the building was being repaired, Dr. Mulopulos told plaintiff that the entire roof did not need to be repaired. Dr. Mulopulos asserted that he never had any problems with the roof and there was still a guarantee on the roof which had been replaced by a contractor prior to defendant's purchase of the building in 1979.

The record includes documents which show that a new roof was put on the northeast corner of the building approximately one month before defendant purchased the premises in 1979. This roofing contract includes a six-year guarantee. Also, a roofing contract for the work performed in February 1982 on Dr. Bora's portion of the building states that the roof over the north section of the building would be replaced and the work would be guaranteed for five years.

In its motion, defendant asserted that it was entitled to summary judgment because plaintiff caused the roof to be inspected prior to closing and had actual knowledge of the condition prior to closing, and defendant made no statement, upon which plaintiff could rely, concerning the roof's condition.

In granting defendant's motion for summary judgment, the circuit court found that "there was notice on behalf of the Plaintiff of the condition that there was a leakage; that he had hired an expert, and the expert came back without any problems or without a report that showed where or when the problems were; that the fact there was a leakage was not held back by the Defendants in any way and that the Defendants did not make any fraudulent or misleading statements that could be relied upon by the Plaintiff."

Thereafter, plaintiff filed a motion for reconsideration and to file a third amended complaint. Plaintiff's proposed third amended complaint contained four counts: (1) negligence; (2) negligent misrepresentation; (3) an undisclosed dangerous condition; and (4) breach of implied warranty of habitability.

The circuit court denied plaintiff's motion and this appeal followed.

On appeal, plaintiff first asserts that the trial court erred in granting defendant's motion for summary judgment because a genuine issue of material fact exists, *i.e.*, whether or not defendant knew or should have known of the defective condition of the subroof.

Defendant responds that summary judgment was appropriate because plaintiff had actual knowledge of the leakage problem and thus was on notice before closing that the roof leaked.

Summary judgment shall be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Connor v. Merrill Lynch Realty, Inc.* (1991), 220 Ill. App. 3d 522, 581 N.E.2d 196.) The pleadings, depositions and affidavits must be construed most strictly against the moving party and most liberally in favor of the opponent. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) Even though a complaint may purport to raise an issue of material fact, if such issue is not further supported by evidentiary facts, summary judgment is appropriate. *Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715, 718, 506 N.E.2d 1052.

■ Generally a vendor of real estate is not liable for injuries sustained on the real estate once the vendor has transferred possession and control of the premises. (*Anderson v. Cosmopolitan National Bank* (1973), 54 Ill. 2d 504, 507, 301 N.E.2d 296; *Firestone v. R.H. Lincoln, Inc.* (1974), 23 Ill. App. 3d 320, 324, 319 N.E.2d 60.) The exception to this general rule is when the vendor actively conceals or fails to reveal a dangerous condition to the vendee. In that case, the liability of the vendor continues until the vendee discovers the defective condition and has an opportunity to remedy it. *Firestone*, 23 Ill. App. 3d at 324.

■ The vendee's knowledge and conduct, however, may preclude the vendor's liability (*Firestone*, 23 Ill. App. 3d at 329) because a purchaser of property "cannot shut his eyes to available information and then charge that he has been deceived." (*Fleisher v. Lettvin* (1990), 199 Ill. App. 3d 504, 511, 557 N.E.2d 383; see also *Connor*, 220 Ill. App. 3d 522, 581 N.E.2d 196; *Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715, 719, 506 N.E.2d 1052.) Thus, the vendor's liability may not be predicated on a defective condition of which the vendee was aware. See *Martin v. 1727 Corp.* (1983), 120 Ill. App. 3d 733, 739, 458 N.E.2d 990.

Where signs of a problem are obvious and observed by the prospective purchaser, the signs put the prospective purchaser on notice of the problem as much as any disclosure by the seller. (*Fleisher*, 199 Ill. App. 3d 504, 557 N.E.2d 383.) In *Fleisher*, based on seller's fraud, plaintiff complained that there was water damage in the walls of the residence from a faulty gutter system and in the basement from flood-

ing. Prior to signing the real estate contract, the plaintiff visited the house on numerous occasions and had various individuals inspect the house. During the inspections, plaintiff and the inspectors noticed signs of water damage, conjectured as to its causes, and decided the source of the problems could not be determined without opening up the walls and the roof. After reducing his purchase offer to account for repair estimates, plaintiff took possession of the house.

As in the case at bar, this court noted in *Fleisher* that plaintiff or his agents had conducted exterior inspections of the house, had not shown that defendants knew the cause of the moisture problems, and specifically noticed the signs of water damage prior to purchase. Regarding the water-damaged basement, the court found:

"The signs of flooding in the basement observed by plaintiff and his agents, which were obvious to anyone inspecting the basement, put plaintiff as much on notice of the probability of basement flooding as any disclosure by defendants would have." *Fleisher*, 199 Ill. App. 3d at 511.

Similarly, a water-stained ceiling put a prospective purchaser on notice of a potential problem and precluded the vendor's liability in *Smith v. Ethell* (1986), 144 Ill. App. 3d 171, 494 N.E.2d 864, where the plaintiffs entered into a contract with the defendants for the purchase of a tavern but later sought to cancel the purchase contract because of the poor condition of the roof. When the plaintiffs visited the building, they observed a portion of the ceiling sagged and was water stained. In response to the plaintiffs' several inquiries made during their inspections, the defendants consistently maintained that the roof was in good condition, the problem was caused by a leak in the air conditioner, and there was no need to inspect the attic. After making a $5,000 down payment, the plaintiffs eventually went into the attic and discovered holes in the roof, water-soaked beams and that part of the seal of the roof had pulled away. The court held that cancellation of the contract was not justified because the plaintiffs were on notice of the problem and were required to investigate the cause of the water damage even though the seller told them that the roof was in good condition and there was no need to inspect the attic. The court reasoned that the "defect was a visible one although the cause of the defect was unclear without further inspection." (*Smith*, 144 Ill. App. 3d at 175.) *Smith* is an even more difficult case than the case at bar, the defendants having made affirmative representations as to the cause of the water leaks.

We find the principles enunciated in *Fleisher* and *Smith* support the granting of defendant's motion for summary judgment in the

present case. Like the plaintiffs in *Fleisher* and *Smith*, the present plaintiff actually observed the water leakage problem. Plaintiff's testimony stating that he did not know the cause of the leak does not erase his awareness of the problem. Further, the water leak in the present case was as visible and obvious as the problems observed in *Fleisher* and *Smith*. Moreover, the present defendant notified plaintiff when the building's tenant, Dr. Bora, complained about the roof leaking and suggested plaintiff meet with the contractor who was repairing the roof. The roofing contractor told plaintiff that the entire roof should be replaced. In addition, plaintiff testified that he was familiar with problems associated with flat roofs because he owned other buildings. Plaintiff also testified that he never paid attention to any discoloration of the ceilings or walls because he had always planned to remodel.

Plaintiff alleges that the defect was "latent" so that absent a duty of inquiry, the defendant cannot be held to be any more aware of the cause of the water leak than plaintiff.

Plaintiff relies heavily on *Sippy v. Cristich* (1980), 4 Kan. App. 2d 511, 609 P.2d 204, although such reliance is misplaced. In *Sippy*, the vendee plaintiffs alleged fraud against the vendor defendants for damages sustained due to a defective roof. Unlike the present case, the vendors in *Sippy* affirmatively claimed the roof had been repaired and was in good condition. The *Sippy* court found that this statement by the vendors was fraudulent because it implied that the roof had been repaired satisfactorily and stated that the "test is whether the recipient has 'information which would serve as a danger signal and a red light to any normal person of his intelligence and experience.' " (*Sippy*, 4 Kan. App. 2d at 515, 609 P.2d at 208, quoting Restatement (Second) of Torts, Tentative Draft No. 11 (1965).) In the present case, a danger signal was clearly evident to plaintiff, who not only saw the water leak but perceived it as a problem.

The Illinois Supreme Court has held that economic losses incurred by a home buyer for the costs of repair and replacement of a defective chimney, adjoining wall and patio are not recoverable under a negligence theory. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324.) In *Redarowicz*, the plaintiff purchased a home from the original owner and then brought an action against the builder on four theories: tort, contract, fraud, and implied warranty of habitability. In affirming the dismissal of the counts based in negligence, the *Redarowizc* court relied on the *Moorman* doctrine, which originated in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443.

■ The *Moorman* doctrine precludes economic damages in tort cases based on negligence. The *Moorman* decision, however, further provided two exceptions to this rule. Economic losses are recoverable (1) where one intentionally makes false representations and (2) where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations. *Moorman*, 91 Ill. 2d at 88-89.

■ In accordance with *Moorman* principles, this court held that the plaintiffs who had purchased a home and later discovered numerous defects could not recover economic losses from the sellers under a negligence count. (*Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 510 N.E.2d 409.) This court reasoned that the sellers did not fall within the *Moorman* exception. (*Zimmerman*, 156 Ill. App. 3d at 164.) However, a cause of action against the sellers could be maintained where intentional misrepresentation or intentional fraud was sufficiently alleged. *Zimmerman*, 156 Ill. App. 3d at 164.

In the present case, plaintiff's second amended complaint alleges only negligence, not intentional misrepresentation or fraud.

Our examination of the record in this case discloses no triable issue of material fact and thus summary judgment was appropriate.

■ Plaintiff next contends that the circuit court erred in denying his motion for reconsideration or rehearing to vacate summary judgment under section 2—1203 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—1203) and for leave to file a third amended complaint under section 2—1005(g) of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(g)).

The purpose of a motion to vacate is to alert the trial court to errors it has committed and afford an opportunity for their correction. (*In re Marriage of Stuart* (1986), 141 Ill. App. 3d 314, 316, 490 N.E.2d 243; *Abbey Plumbing & Heating, Inc. v. Brown* (1977), 47 Ill. App. 3d 719, 722, 365 N.E.2d 115.) A section 2—1203 motion invokes the sound discretion of the trial court. *In re Marriage of Rosen* (1984), 126 Ill. App. 3d 766, 467 N.E.2d 962; *Abbey Plumbing & Heating*, 47 Ill. App. 3d 719, 365 N.E.2d 115.

The record on appeal does not include a report of the hearing which was apparently held on plaintiff's section 2—1203 motion. In the absence of a report of the proceeding, a reviewing court must assume the circuit court heard sufficient evidence upon which to base its decision. *Abbey Plumbing & Heating*, 47 Ill. App. 3d at 722.

From the record on appeal, we cannot say that the circuit court abused its discretion in denying plaintiff's motion to reconsider and vacate summary judgment.

Plaintiff's proposed third amended complaint contains four theories of liability: (1) negligence; (2) negligent misrepresentation; (3) undisclosed dangerous condition; and (4) breach of implied warranty of habitability. Plaintiff acknowledges that Illinois does not recognize a legal cause of action for breach of implied warranty of habitability under the circumstances of this case.

Defendant responds that the refusal to allow the filing of plaintiff's third amended complaint was proper because each count is defective and the proposed amended complaint does not contain any factual allegations which were not presented to the circuit court when it decided the motion for summary judgment.

Section 2—1005(g) provides that "[b]efore or after the entry of summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(g).) Under the Code, amendments are allowed on just and reasonable terms at any time before final judgment. (Ill. Rev. Stat. 1989, ch. 110, par. 2—616.) Whether or not to grant leave to amend a complaint rests within the sound discretion of the circuit court. *Ruklick v. Julius Schmid, Inc.* (1988), 169 Ill. App. 3d 1098, 1111, 523 N.E.2d 1208.

The relevant factors considered in determining whether or not to allow amendment of pleadings are: (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) the timeliness of the proposed amendment; and (4) whether previous opportunities to amend the pleadings could be identified. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 273, 586 N.E.2d 1211.) However, the primary consideration is whether amendment would further the ends of justice. (*Ruklick*, 169 Ill. App. 3d at 1113.) Where it is apparent even after amendment that no cause of action can be stated, leave to amend should be denied. *Ruklick*, 169 Ill. App. 3d at 1111.

Plaintiff's proposed third amended complaint does not cure the defects in the prior pleadings, does not present any factual allegations which have not already been addressed by the trial court, and attempts to state a cause of action under a theory not yet recognized against a vendor such as defendant (breach of implied warranty of habitability).

To satisfy the next two elements of the test enunciated in *Loyola Academy*, a plaintiff must file a proposed amendment within a reasonable length of time. Filing a motion to amend within 17 months after filing the cause of action is a reasonable length of time. (*Loyola Academy*, 146 Ill. 2d at 275.) In contrast, filing a motion to amend a complaint six years after the underlying incident occurred and four years after the original complaint was filed has been determined an unreasonable length of time. (*Wingate v. Camelot Swim Club, Inc.* (1990), 193 Ill. App. 3d 963, 550 N.E.2d 665.) In the present case, plaintiff sought to file his third amended complaint over seven years since the discovery of the defect and over six years after the cause was filed.

Regarding the last factor, the record reveals that plaintiff clearly had previous opportunities to amend the pleading as he had already done so twice before summary judgment was granted.

We find that plaintiff did not meet the requirements enunciated in *Loyola Academy* and do not believe that the ends of justice would be furthered by allowing plaintiff to amend his complaint. Accordingly, we find that the circuit court did not abuse its discretion in denying plaintiff's motion to file an amended complaint.

Judgment affirmed.

RIZZI and CERDA, JJ., concur.