ROSALIE A. HILL, Plaintiff-Appellant, v. PRAKASH PEDAPATI, Indiv. and as Agent of SwedishAmerican Hospital Association of Rockford, *et al.*, Defendants-Appellees.

Second District    No. 2—00—0735

Opinion filed November 28, 2001.

Randall F. Peters and William H. Kohaus, Jr., both of Randall F. Peters & Associates, of Chicago, for appellant.

Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, and Douglas J. Pomatto and Susan M. Witt, both of Heyl, Royster, Voelker & Allen, of Rockford, for appellees Thornton C. Kline, Jr., and Prakash Pedapati.

Charles A. Egner and David P. Faulkner, both of Lord, Bissell & Brook, of Rockford, for appellee SwedishAmerican Hospital Association of Rockford.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Rosalie A. Hill, brought this medical malpractice action in the circuit court of Winnebago County against defendants Prakash Pedapati, M.D., Thornton C. Kline, Jr., M.D., and SwedishAmerican Hospital Association of Rockford (SwedishAmerican). The trial court entered summary judgment for defendants on the basis that the cause of action was barred by the two-year statute of limitations for medical malpractice (735 ILCS 5/13—212(a) (West 1996)). On appeal, plaintiff argues that the lawsuit was timely under the discovery rule. We reverse and remand.

The record reveals that in June 1993 plaintiff underwent surgery for the removal of an anal carcinoma and later received radiation treatment. Defendants Pedapati and Kline supervised the radiation treatment, which was administered during the period from August 16, 1993, through October 12, 1993, at SwedishAmerican. After the surgery, but prior to the radiation treatment, plaintiff developed vaginal pain and severe pain associated with bowel movements. During the course of the radiation treatments plaintiff suffered severe pain, redness, peeling, and bleeding in the pelvic and abdominal region. This cleared up within about a month after the completion of the radiation treatments, but plaintiff temporarily suspended the radiation treatments on two occasions because of the pain.

Plaintiff continued to suffer vaginal and rectal pain and also suffered pain in the region from above her pubic bone to her abdomen. According to plaintiff's deposition testimony, around Thanksgiving 1993 she knew that the pain was not getting any better. Late in November 1993, surgery was performed to reconstruct plaintiff's rectum, but plaintiff continued to suffer pain associated with bowel movements. At her deposition plaintiff testified that the surgeon, Dr. McCanse, told her the pain was related to the radiation treatment and would be permanent. At some point between November 1993 and January 1995, another physician, Dr. Whitely, told plaintiff that the problems she was suffering were related to the radiation treatment and that "[t]hings will get worse before they ever get better if they get better."

Plaintiff testified at her deposition that she first thought about

consulting an attorney early in 1994. She also acknowledged that she contacted Dr. Pedapati's office to determine the dates when she had suspended the radiation treatments. Plaintiff further acknowledged that when she made this inquiry she felt something was wrong with the radiation treatments. Plaintiff stated, "I was thinking that when I did have the treatment and then I took a break[,] *** I kept telling myself if I hadn't taken the rest of [the treatments] I wouldn't have been this bad." While plaintiff indicated that she had no reason to disagree with defense counsel's assertion that she made the inquiry in September 1994, plaintiff testified that she did not recall when she contacted Dr. Pedapati's office.

On January 3, 1995, plaintiff was diagnosed with a comminuted insufficiency fracture of her left pubic bone and bilateral nondisplaced sacral insufficiency fractures. On January 3, 1997, she filed this lawsuit alleging that Drs. Pedapati and Kline were negligent in administering and monitoring her radiation and treatment and that their negligence was the proximate cause of the fractures. Plaintiff sought recovery from SwedishAmerican under agency principles.

Defendants moved for summary judgment, contending that plaintiff knew or reasonably should have known of her injury, and that it was wrongfully caused, before the fractures were discovered on January 3, 1995, and her complaint filed on January 3, 1997, was untimely. Defendants relied on evidence that around Thanksgiving 1993 plaintiff knew her pain was not improving; two physicians told her that her problems were due to the radiation; she considered contacting an attorney early in 1994; and she contacted Dr. Pedapati's office because she felt her resumption of the radiation treatment (which had been suspended due to side effects) caused the problems she was experiencing. Defendants also relied on the deposition testimony of several of plaintiff's relatives that while plaintiff was receiving the radiation, and on other occasions prior to January 1995, plaintiff had complained that she was being given too much radiation or that her doctors were doing something wrong, and that she was very dissatisfied with her care. The trial court granted defendants' motion and this appeal followed.

■ Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1996). In determining whether a genuine issue exists as to any material fact, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the opponent. *Gilbert v. Sycamore Mu-*

*nicipal Hospital*, 156 Ill. 2d 511, 518 (1993). Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. *Gilbert*, 156 Ill. 2d at 518.

■ Section 13—212(a) of the Code of Civil Procedure provides, in pertinent part:

> "[N]o action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." 735 ILCS 5/13—212(a) (West 1996).

Under the "discovery rule" set forth in this provision, the limitations period "starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981). Stated differently, the limitations period commences when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416 (1981); see also *Dockery v. Ortiz*, 185 Ill. App. 3d 296, 305-06 (1989).

Plaintiff argues that aggressive cancer therapy often involves severe side effects and the particular side effects she suffered did not alert her to the possibility that her doctors' conduct was actionable. Plaintiff maintains that it was only when she discovered that the radiation caused fractures that she had reason to know that the treatment was negligently administered. Defendants contend that prior to January 1995 plaintiff knew she suffered injuries from the radiation. Citing *Golla v. General Motors Corp.*, 167 Ill. 2d 353 (1995), defendants argue that the fact that plaintiff might not have known the full extent of the injuries would not prevent the statute of limitations from running. Defendants contend that plaintiff's own deposition testimony and that of her relatives establishes that she knew or suspected something was wrong with the radiation treatment before January 1995.

While plaintiff experienced burning and other severe, painful side

effects from the radiation treatment, they were not so clearly outside the realm of what ordinarily accompanies aggressive cancer therapy that the typical patient would necessarily have reason to suspect that the treatment was administered negligently. Unfortunately, severe side effects are not uncommon in this setting. While these side effects were obviously very distressing, they might be considered medically "normal" in this particular context. A jury could reasonably infer that the initial side effects plaintiff suffered would not put a reasonable person on notice of a malpractice claim and that the duty of inquiry only arose when plaintiff learned of her more serious latent injuries.

Defendants' reliance on *Golla* is misplaced. In *Golla*, the plaintiff was involved in a motor vehicle collision and sustained a shoulder injury due to an alleged defect in the vehicle's seat, which violently slid forward during the collision. The *Golla* court noted that when an injury is caused by a sudden traumatic event, the statute of limitations begins to run at the time the injury occurred. *Golla*, 167 Ill. 2d at 361. The plaintiff in *Golla* did not claim that she was unaware of her injury at the time of the collision or that she was unaware of the causal connection between the injury and the alleged defect in the automobile seat. Instead, she contended that the statute of limitations did not begin to run until she was aware of the ultimate extent of her injuries, which initially appeared to be relatively minor. *Golla*, 167 Ill. 2d at 364, 368-69. The *Golla* court rejected this argument, reciting the general rule that "the limitations period commences when the plaintiff is injured, rather than when the plaintiff realizes the consequences of the injury or the full extent of her injuries." *Golla*, 167 Ill. 2d at 364.

In this case, however, plaintiff's injury was not the result of a sudden traumatic event that would put her on immediate notice of actionable conduct. Additionally, the extent of plaintiff's injury is closely related to the wrongfulness of its cause. For the reasons discussed above, a jury could conclude that plaintiff was not on notice that defendants had done anything improper until she learned that the radiation had actually resulted in the fractures.

In their brief, defendants Pedapati and Kline cite several decisions where the discovery rule was held to bar medical malpractice lawsuits. See *Blair v. Blondis*, 160 Ill. App. 3d 184 (1987); *Conley v. Springfield Clinic*, 130 Ill. App. 3d 369 (1985); *Gaudynski v. Corbett*, 81 Ill. App. 3d 910 (1980); *O'Bryant v. Starkman*, 53 Ill. App. 3d 991 (1977). For the reasons discussed below, the cases are inapposite.

In *Blair*, the plaintiff underwent a biopsy to determine whether a mass in her breast was cancerous. No malignancy was discovered, but the plaintiff alleged that the defendant's negligence in performing the biopsy resulted in the disfigurement of her breast. The court rejected

her argument that the statute of limitations did not begin to run until she learned that the biopsy was unnecessary. Rather, the court held that because she was horrified and felt disfigured when she first saw the result of the procedure, she almost immediately contacted a reconstructive surgeon, and the reconstructive surgeon told her it was possible the defendant had removed too much tissue, the plaintiff was on notice that her injury was wrongfully caused. *Blair*, 160 Ill. App. 3d at 189.

In *Conley* the plaintiff experienced pain in her shoulder and her shoulder began to droop after surgery. Plaintiff alleged that the defendant severed a nerve in her neck. About six weeks after the surgery, the plaintiff reported these symptoms to the defendant's nurse and stated that the defendant had " 'cut something that he shouldn't have.' " *Conley*, 130 Ill. App. 3d at 369-70. The court held that at that point the burden was on the plaintiff to make further inquiry. *Conley*, 130 Ill. App. 3d at 370-71.

In *Gaudynski*, the court held that a hip surgery patient should have known that his injury was caused by the improper care the defendants provided when he learned that the bone had become infected. *Gaudynski*, 81 Ill. App. 3d at 914. Finally, in *O'Bryant* the plaintiff sought treatment for a dislocated kneecap, the defendant released the plaintiff from his care without administering any treatment, and the plaintiff injured her leg on her way home. The *O'Bryant* court held that the limitations period began to run, at the latest, the next day when the plaintiff related these facts to another physician. At that point, "[plaintiff] had a reason to believe that there might be a causative link between her physical condition and the conduct of defendant." *O'Bryant*, 53 Ill. App. 3d at 993.

While these cases illustrate the application of the discovery rule, the results reached are clearly a function of the particular injuries and medical procedures involved. We find no meaningful basis for comparison between these cases and the case before us. Unlike the injuries in *Blair* and *Conley*, and the serious complication in *Gaudynski*, plaintiff's initial side effects were not necessarily so severe or unanticipated that a jury could only conclude that plaintiff was on inquiry to determine whether actionable conduct was involved. *O'Bryant* is also inapposite in view of the clear link in that case between the defendant's failure to provide treatment and the plaintiff's subsequent injury.

Defendants also emphasize the evidence that prior to January 1995 plaintiff believed that she had been given too much radiation; she expressed dissatisfaction with her treatment; she thought about contacting a lawyer; and she made an inquiry to one of the defendant's

offices because she thought the treatment had caused her problems. Some decisions suggest that a plaintiff's subjective concerns about the quality of care may be relevant to the application of the discovery rule. See *Blair*, 160 Ill. App. 3d at 189 (relying, in part, on plaintiff's "extreme dissatisfaction with the results of the surgery"); *Conley*, 130 Ill. App. 3d at 370-71 (holding that duty of inquiry arose when plaintiff knew of her injury and "attributed" it to defendant's wrongful conduct). However, we do not believe the plaintiff's subjective belief is controlling. Mere suspicions of wrongdoing are not the same as knowledge that a wrong was probably committed. *Young v. McKiegue*, 303 Ill. App. 3d 380, 390 (1999). The *Young* court observed:

> "[W]hether a party possessed the requisite constructive knowledge contemplates an objective analysis of the factual circumstances involved in the case. Thus, the relevant determination rests on what a reasonable person should have known under the circumstances and not on what the particular party specifically suspected. The trier of fact must examine the factual circumstances upon which the suspicions are predicated and determine if they would lead a reasonable person to believe that wrongful conduct was involved. The fact that a party suspects wrongful conduct, without examining the reasons underlying those suspicions, is not enough to constitute constructive knowledge that an injury was wrongfully caused." *Young*, 303 Ill. App. 3d at 390.

■ Here, plaintiff's concerns could be viewed as an overall reaction to the combination of extremely unpleasant side effects she experienced, such as the burning during the treatments and her pain during bowel movements. It is not clear, however, that these side effects were themselves actionable injuries or that a reasonably diligent patient would necessarily view them as such. Even if plaintiff subjectively believed the initial side effects were actionable, pursuant to *Young* she should not be foreclosed from recovering for other latent injuries when she subsequently became aware of them and had an objective basis to believe medical malpractice had been committed.

We conclude that a genuine issue of fact exists as to when plaintiff knew or reasonably should have known of her injury and its wrongful cause. Accordingly, summary judgment was improper.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

HUTCHINSON, P.J., and GEIGER, J., concur.